**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 3:23-00878** |
| | ) | **Crenshaw/Newbern** |
| | ) | |
| **CRYSTAL RAY, and** | ) | |
| **RICKY RAY, dba RR FARMS** | ) | |
| **aka, RR FARMS MASS GRADING,** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT**

The Plaintiff, Tennessee Riverkeeper, states as follows:

**NATURE OF THE CASE**

1. This is a citizen's suit, brought pursuant to the provisions of Section 505(a)(1) of the Federal Water Pollution Control Act, also known as the Clean Water Act (hereinafter "CWA"), as amended, 33 U.S.C. § 1365(a)(1), and section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), to address violations of those acts by the Defendants, Crystal Ray and Ricky Ray, dba RR Farms, aka RR Farms Mass Grading, ("The Rays"), for violations of the CWA and the Tennessee Water Quality Control Act of 1977, as amended, § 69-3-101, *et seq.*, and the regulations thereunder, and under section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), for violations of RCRA's prohibition on the operation of an open dump.

2. The Rays are violating the CWA due to the unpermitted discharges of pollutants, more specifically, contaminated stormwater, from the RR Farms Mass Grading, located at 5250 Ashland

City Hwy, Davidson County, Tennessee (the "Site"). These discharges are not allowed under their present National Pollutant Discharge Elimination System ("NPDES") stormwater permit.

3. The Rays are also violating the CWA due to operating a Construction and Demolition Landfill without a landfill NPDES permit.

4. The Rays are violating RCRA because these CWA violations cause the Site to constitute an open dump and because the Rays have not obtained a landfill permit.

5. To Plaintiff's knowledge and belief, Defendants receive excavated materials from construction sites and are paid a fee to dispose of the materials at the Site. They receive and permanently dispose of massive amounts of excavated soil, stone, and concrete from construction sites and have created two huge mountains of dirt, each raised approximately 200 feet above the original elevation of the site. There are no legitimate construction purposes for the deposit of these materials at the site. The Rays have made insufficient effort to contain muddy runoff from their property and the runoff is causing water quality violations, excessive turbidity, and the deposition of siltation in tributaries of Sulphur Creek, Sulphur Creek itself, and/or the Cumberland River.

6. The Rays are in violation of sections 301 and 402 of the CWA (33 U.S.C. §§1311 and 1342) and sections 122.1, *et sec.,* of Title 40 of the Code of Federal Regulations. These laws prohibit any facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the NPDES.

7. The Rays are violating provisions of their NPDES permit by operating the Site in a manner that discharges pollutants to the waters of the United States and waters of the state due to their failure to operate the Site within the requirements of their permit.

8. Riverkeeper seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of litigation costs, including attorney and expert witness fees, for the defendants repeated and ongoing violations of the CWA and RCRA.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the claims set forth in this Complaint by virtue of Section 505(a)(1) of the Federal Water Pollution Control Act ("FWPCA") , also known as the Clean Water Act ("CWA"), 33 U.S.C. §1365 (a)(1), section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), and by virtue of 28 U.S.C. § 1331 (actions arising under the Constitution or laws of the United States).

10. The relief requested is authorized pursuant to 28 U.S.C. § 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration); 33 U.S.C. § 1319(b), 1365(a) (injunctive relief); and 33 U.S.C. § 1319(d), 1365(a) (civil penalties).

11. Venue is appropriate in the Middle District of Tennessee pursuant to 33 U.S.C. § 1365(c)(1) and because the acts, omissions, and/or violations complained of herein occurred, and continue to occur, within Nashville, Davidson County Tennessee.

## NOTICE

12. Plaintiff, Tennessee Riverkeeper ("Riverkeeper") has complied with the pre-suit notice provisions of the CWA.

13. Pursuant to 33 U.S.C. § 1365(b)(1)(A), 40 C.F.R. Part 135, Riverkeeper, on June 5, 2023, gave each of the Defendants notice of the violations alleged herein and its intent to sue after the expiration of sixty (60) days (the "June Notice").

14. At the same time, Riverkeeper mailed a copy of the June Notice to the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator of Region IV of the EPA, and the Commissioner of the Tennessee Department of Environment and Conservation ("TDEC").

15. Service of notice on Defendants was by certified mail.

16. More than 60 days, and less than 120 days, have passed since the June Notice was served on Defendants and these agencies. The June Notice is attached hereto as Exhibit 1 and incorporated by reference herein.

17. Since Riverkeeper gave notice, the violations complained of have not ceased, and are ongoing and neither the EPA nor the State of Tennessee has commenced and diligently prosecuted a civil or criminal enforcement action in a court of the United States or a state for the violations.

18. Furthermore, prior to the June Notice, neither the EPA nor the State of Tennessee commenced and diligently prosecuted an administrative action under 33 U.S.C. §1319(g), or under a comparable Tennessee law, for the violations alleged herein.

19. Neither the EPA nor the state has issued a final order not subject to further judicial review and the Defendants have not paid a penalty assessed under 33 U.S.C. §1319(g), or under a comparable Tennessee law, for the violations.

20. Riverkeeper will mail, contemporaneously with the filing hereof, a copy of this Complaint to the Administrator of the EPA, the Regional Administrator of EPA Region 4, the Region in which the violations are alleged to have occurred, and the Attorney General of the United States.

## PARTIES

21. Plaintiff, Tennessee Riverkeeper is a non-profit corporation formed in the State of Alabama and granted authority to operate in Tennessee by the Division of Business Services, State of Tennessee, as a nonprofit foreign corporation.

22. Riverkeeper has approximately 3000 members, and is dedicated to the preservation, protection, and defense of the Tennessee and Cumberland Rivers and their tributaries.

23. Riverkeeper actively supports effective enforcement and implementation of environmental laws, including the CWA, on behalf of and for the benefit of its members.

24. Members of Tennessee Riverkeeper have recreated in, on or near, or otherwise used and enjoyed, or attempted to use and enjoy, the Cumberland River (and its tributaries) in the past, and they intend to do so in the future.

25. They have a direct and beneficial interest in the continued protection, preservation, and enhancement of the environmental, aesthetic, and recreational values in the Cumberland River and its tributaries.

26. The quality of these waters directly affects the recreational, aesthetic, and environmental interests of certain members of Tennessee Riverkeeper.

27. The recreational, aesthetic, and environmental interests of certain of Tennessee Riverkeeper's members have been, are being, and will be adversely affected by the Defendant's continued violation of the NPDES permit requirements, Tennessee NPDES rules, the CWA, and the RCRA as alleged in this complaint.

28. Defendants' illegal discharges from the Site enter two unnamed streams, each of which is a tributary of Sulphur Creek, which is a tributary of the Cumberland River.

29. The violations alleged herein have had a detrimental impact on Tennessee Riverkeeper members' interests because the violations have adversely affected and/or diminished aquatic life and water quality in these waters and have made these waters less suitable for fishing, boating, swimming, wading, walking, observing nature, or relaxing.

30. Said members would recreate more in and around these waters but for Defendants' illegal discharges of pollution.

31. The Declaration of Nicholas J. Keck is attached hereto as Exhibit 2 and incorporated by reference herein.

32. Mr. Keck is a member of Tennessee Riverkeeper. He is a resident of Ashland City, Tennessee.

33. Mr. Keck owns a 3.4 acre parcel of property along Sulphur Creek which he uses for recreation and watching the creek and the various forms of wildlife that access the water on his property.

34. Muddy water from the site enters an unnamed stream and runs along the eastern side of his property, then enters Sulphur Creek and runs alongside the southern side of his property.

35. Mr. Keck finds the polluted water degrades the natural beauty of the area and causes the property to be less appealing to him, his wife, and his guests.

36. The pollution has caused him to question whether he should build his dream home on the property as he has planned. He and his wife have long dreamed of raising his future family on the site and watching his future children play in the creek. Now he is concerned that will not be possible.

37. Riverkeeper is a "citizen" within the meaning of 33 U.S.C. §§ 1365(g), 1365(a), and 42 U.S.C. § 6972(a), with standing to bring this action.

38. Defendants, the Rays, are individual residents of Waterton, Tennessee, within the Middle District of Tennessee.

39. The Rays own, operate, and are doing business as RR Farms which is also known as RR Farms Mass Grading.

40. Defendant Crystal Ray is a "person" within the meaning of 33 U.S.C. §§1362(5) and 1365(a)(1).

41. Defendant Ricky Ray is a "person" within the meaning of 33 U.S.C. §§1362(5) and 1365(a)(1).

## STATUTORY BACKGROUND

42. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States unless the discharge is in compliance with various enumerated sections of the CWA.

43. Among other things, Section 301(a) prohibits such discharges not authorized by, or in violation of the terms of, a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

44. The State of Tennessee has been delegated the authority to implement the permitting programs of the Act by the EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b).

45. TDEC is the water pollution control agency for purposes of the Act and has drafted regulations pursuant to that authority implementing the Act's permitting programs within the State of Tennessee.

46. A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms and conditions of NPDES permits. 33 U.S.C. § 1365(f).

47. Section 4005 of RCRA, 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2), prohibit the operation of an open dump for land disposal of solid waste, as the term is defined in 42 U.S.C. § 6903(14) and in 40 C.F.R. Part 257.

48. A citizen suit, pursuant to 42 U.S.C. § 6972, may be brought for violations of the RCRA.

49. A landfill that does not comply with applicable regulations (40 CFR 257.1, et sec), is defined as an "open dump".

50. RCRA regulations define the term "open dump" as any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under section 6944 of [Title 42] …" 42 USC 6903(14). Promulgated under Title 42 section 6944 are the regulations found at 40 CFR 257.1 thru 257.4 which were adopted for determining which solid waste disposal facilities and practices pose a reasonable probability of adverse effects on health or the environment under sections of the RCRA. 40 CFR 257.1.

51. These regulations prohibit a facility from discharging pollutants into waters of the United States that is in violation of the requirements of the NPDES. 40 CFR 257.3-3.

52. "Open dump" is also defined as a facility for the disposal of solid waste which does not comply with Title 40 CFR part 257.2.

53. RCRA regulations define the term construction and demolition (C&D) landfill as "a solid waste disposal facility subject to the requirements of subparts A or B of this part that receives construction and demolition waste … A C&D landfill typically receives any one or more of the following types of solid wastes: Roadwork material, excavated material, demolition waste, construction/renovation waste, and site clearance waste." 40 CFR 257.2.

54. RCRA regulations define the term "landfill" as an area of land or an excavation in which waste is placed for permanent disposal, and that is not a land application unit, surface impoundment, injection well, or waste pile. 40 CFR 257.2.

55. RCRA regulations define the term "Disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 40 CFR 257.2.

56. RCRA defines the term "solid waste" as "any garbage, refuse… and other discarded material …" 42 USC 6903(27).

57. Facilities failing to satisfy any of the criteria in §§257.1 through 257.4 or §§257.5 through 257.30 or §§257.50 through 257.107 are considered open dumps, which are prohibited under section 4005 of the Act. 40 CFR 257.1(a)(1).

58. Practices failing to satisfy any of the criteria in §§257.1 through 257.4 or §§257.5 through 257.30 or §§257.50 through 257.107 constitute open dumping, which is prohibited under section 4005 of the Act. 40 CFR 257.1(a)(2).

59. "For purposes of section 4004(a) of the Act, a facility shall not cause a discharge of pollutants into waters of the United States that is in violation of the requirements of the

National Pollutant Discharge Elimination System (NPDES) under section 402 of the Clean Water Act, as amended." 40 CFR 257.3-3(a).

60. "For purposes of section 4004(a) of the Act, a facility shall not cause a discharge of dredged material or fill material to waters of the United States that is in violation of the requirements under section 404 of the Clean Water Act, as amended." 40 CFR 257.3-3(b).

## GENERAL ALLEGATIONS

61. This is an action for declaratory judgment, injunctive relief, civil penalties, and litigation costs, including reasonable attorney's and expert witness fees, to enforce provisions of the CWA, RCRA, and regulations adopted pursuant to said acts.

62. The Rays are in violation of sections 301 and 402 of the CWA (33 U.S.C. §§1311 and 1342) and sections 122.1, *et sec.,* of Title 40 of the Code of Federal Regulations, which prohibit a facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the NPDES.

63. The Rays were granted coverage under the Tennessee General Permit for Discharges of Stormwater Associated with Construction Activities, Permit Number TNR100000 ("NPDES Permit", "Stormwater Permit", or "Permit"), which authorizes operators of point source discharges of stormwater associated with construction activities into waters of the State of Tennessee to discharge stormwater associated with construction activities in accordance with the permit monitoring and reporting requirements, effluent limitations, and other provisions from permit parts 1 through 10 from the subject outfalls to waters of the State of Tennessee. The Rays were assigned the permit tracking numbers TNR244256 and TNR246297.

64. As set forth in Count One, below, and in the June Notice, the Rays violated the CWA by operating the Site in a manner that discharges pollutants to the waters of the United States and waters of the state in violation of the Permit.

65. As set forth in Counts Two and Three, below, and in the June Notice, the Rays violated the RCRA by operating the Site in a manner that characterizes the site as an open dump, the operation of which is characterized as open dumping and is prohibited by RCRA.

66. The violations set forth herein and in the June Notice are continuing and ongoing, or are likely to recur, as of the date this Complaint is being filed.

**COUNT ONE**
**VIOLATIONS OF THE CLEAN WATER ACT**

67. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the paragraphs above as if fully set out in this count.

68. The Rays are in violation of sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and 40 C.F.R § 122.1, *et seq*, as well as similar provisions of Tennessee law. *See,* The Tennessee Water Quality Control Act of 1977, as amended, § 69-3-101 through 69-3-137.

69. These laws prohibit any facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the NPDES. The Rays' Stormwater Permit sets certain requirements with which the permit holder must comply. The Rays have violated the permit by failing to comply with its requirements as follows:

A. **Failure to Conduct and Submit a Site Assessment.**

70. In accordance with the Permit, RR Farms created a Stormwater Pollution Prevention Plan (the "SWPPP").

71. Section 1.4.2 of the Permit states that "The SWPPP must be developed, implemented and updated according to the requirements in Part 5 and Section 6.4.1."

72. Permit Part 5.5.3.8. requires that a quality assurance of Erosion Prevention and Sediment Controls (EPSCs) be done by performing site assessments.

73. The site assessment must be conducted at each outfall draining 10 or more acres. Site assessments must cover the entire disturbed area and occur within 30 days of construction commencing at each portion of the site that drains the qualifying acreage.

74. At a minimum, site assessments should be performed to verify the installation, functionality and performance of the EPSC measures described in the SWPPP.

75. If structural BMPs (or equivalent EPSC measures) are not constructed or construction is in progress at the time of the site assessment, a follow-up monthly assessment(s) is required until the BMPs are constructed per the SWPPP.

76. A drainage area of 10 or more acres includes disturbed and undisturbed portions of the site and areas adjacent to the site, all draining through the common outfall. Section 5.5.3.5. of the Permit.

77. The SWPPP, filed on or about May 13, 2020, states, "The drainage area for each outfall is less than 10 acres, therefore a site assessment is not required by the permit." SWPPP, May 13, 2020, unnumbered pages.

78. An email on June 9, 2020 from Bill Murph, Program Coordinator, Division of Water Resources, Nashville Environmental Field Office, TDEC to crystalray101@yahoo.com, rray@summitconstructors.com, and randy.harper@gmcnetwork.com, states, in part, "Please be advised, this NOC requires that a Site Assessment (§3.1.2. of the CGP) be done

and the Division requests a copy of the documentation be submitted (electronically to DWR.NEFO@tn.gov) within the time frame outlined in the CGP."

79. The SWPPP states that the area of the construction site is 38.56 acres. It describes two discharge points.

80. Logic dictates that at least one of the two discharge points must drain more than 10 acres of the 38.56 total acres, and thus trigger the requirement of a site assessment.

81. A June 28, 2023 inspection of the site by Bill Murph found that TDEC has not received the site assessment and it was not found on-site.

82. Based upon information and belief, the Rays have failed to conduct and submit a site assessment.

83. The Rays have violated the permit by failure to file a site assessment and/or by failure to update the site assessment.

84. Each day of operation without the required submission of an updated site assessment is a separate violation of the permit and the CWA.

**B. The SWPPP's Erosion and Sediment Control Designs Do Not Comply With Permit Requirements.**

85. Section 5.5.3.5 of the Permit states that EPSC measures shall be designed to minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm (the design storm). The design of erosion prevention and sediment controls must adhere to good engineering practices.

86. A June 28, 2023, inspection of the site by Bill Murph found that upon a visual inspection of the settlement basin it does not appear that it has been designed according to size and elevation specifications in the EPSC plan sheet on page C-5.3.

87. The EPSC measures at the Site were not designed to minimize erosion and maximize sediment removal because it does not minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm, and therefore the design does not adhere to good engineering practices and is in violation of the Permit.

**C. Failure to Design, Install and Maintain Erosion Prevention and Sediment Controls Appropriate for the Site Conditions.**

88. The Permit requires erosion prevention and sediment control. Permit, § 4.1.1.

89. It states that the permitee is required to:

> Design, install and maintain effective erosion and sediment controls to minimize the discharge of pollutants. At a minimum, such controls must be designed, installed and maintained to:
> 1) Control stormwater volume and velocity to minimize soil erosion in order to minimize pollutant discharges;
> 2) Control stormwater discharges, including both peak flowrates and total stormwater volume, to minimize channel and streambank erosion and scour in the immediate vicinity of discharge points;
> 3) Minimize the amount of soil exposed during construction activity;
> 4) Minimize the disturbance of steep slopes;
> 5) Minimize sediment discharges from the site. The design, installation and maintenance of erosion and sediment controls must address factors such as the amount, frequency, intensity and duration of precipitation and the range of soil particle sizes expected to be present on the site.

90. Defendants have failed to utilize stormwater control and erosion prevention measures to control stormwater volume and velocity and control stormwater discharges, as required by Permit Section 4.1.1 (1) and (2).

91. Defendants have constructed steep slopes which have been allowed to erode and create rills and gullies.

92. Defendants failed to minimize the amount of soil exposed during construction activity, in violation of Permit Section 4.1.1.(5). For a long period of time, RR Farms has exposed and left bare the soil on nearly the entire site.

93. Because the SWPPP for the Development was not designed "to minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm," it is not designed "to minimize pollution discharges" or to "[m]inimize sediment discharges from the site," as required by Permit Section 4.1.1 (5).

**D. Failure to Apply Best Practicable Control Technology.**

94. Section 4.1 of the Permit requires "Any point source authorized by this general permit must achieve, at a minimum, the effluent limitations representing the degree of effluent reduction attainable by application of best practicable control technology ("BPT") currently available."

95. Defendants are in violation of this Section of the Permit in that the BPT has not been applied. Essentially, the technology that RR Farms utilized to control sediment runoff was a silt fence stormwater barrier, a rock check dam, and an ineffective retention pond. This was not the BPT currently available. Thus, RR Farms violated this provision of the Permit.

**E. Failure To Design, Install, Implement and Maintain Effective Pollution Prevention Measures to Minimize the Discharge of Sediment and Other Pollutants.**

96. Section 4.1.4. of the Permit requires "The permittee must design, install, implement, and maintain effective pollution prevention measures to minimize the discharge of sediment and other pollutants. Discharge of muddy, highly turbid water from the site demonstrates

that effective pollution prevention measures were not designed, installed, implemented, and/or maintained, in violation of this provision of the Permit.

**F. Failure to Maintain Effective Best Management Practices.**

97. Section 5.1 of the Permit requires that a Stormwater Pollution Prevention Plan (SWPPP) must be prepared and submitted along with the NOI as required in Section 1.4.2. The primary permittee must implement the SWPPP and maintain effective Best Management Practices (BMPs) from commencement of construction activity until permanent stabilization is complete, or until the permittee does not have design or operational control of any portion of the construction site.

98. Section 5.1 requires that a site-specific SWPPP must be developed for each construction project or activity covered by the permit. The design, inspection and maintenance of BMPs described in the SWPPP must be prepared in accordance with good engineering practices. At a minimum, BMPs shall be consistent with the recommendations contained in the current edition of the Tennessee Erosion and Sediment Control Handbook (the handbook).

99. Defendants have violated this Permit provision by failing to maintain effective BMPs from commencement of construction activity until permanent stabilization is complete.

**G. Failure to Provide a Description of All Construction Activities at the Site.**

100. Section 5.5.1.a. of the Permit requires that the SWPPP shall provide a description of all construction activities at the site, including the intended sequence of

activities which disturb soils for major portions of the site (e.g., grubbing, excavation, grading, utilities and infrastructure installation).

101. The SWPPP submitted by RR Farms describes the construction activities as follows:

> The proposed project shall consist of the deposition of fill material on the subject site and grading the site according to the plans. Removal of trees and undergrowth will be necessary. The cell tower utilities and driveway will be relocated to the side of the property to allow for future development. Construction activities at the site include installation of sediment control measures, grubbing and stockpiling of topsoil, cutting and filling as necessary to bring the site to grade, installation of drainage conveyance infrastructure, finish grading, paving, landscaping, and final stabilization."

102. The site description in the Notice of Intent states merely "Mass grading and driveway for cell tower."

103. Neither of these documents states that the site will receive and permanently dispose of massive amounts of excavated soil from construction sites. It was not disclosed that RR Farms would create two huge mountains of soil, concrete, and rock, each raised approximately 200 feet above the original elevation of the site.

**H. Failure to Provide Slope and Drainage Information.**

104. Section 5.5.1.c. of the Permit requires that the SWPPP shall provide Slope and Drainage Information, including "a description of the topography of the site, including an estimation of percent slope and delineation of drainage area (acres) serving each outfall. Drainage area estimates shall include off-site drainage, if applicable."

105. Slope and drainage information as provided by the Rays is for the site as a whole and is not designated for each outfall.

106. Off-site drainage problems are not addressed. The high volume and velocity of the drainage causes erosion and sediment deposits along the tributaries to Sulphur Creek.

**I. Failure to Provide a Description of How Runoff Will Be Handled.**

107. Section 5.5.1.e. of the Permit requires that the SWPPP shall provide a description of how the runoff will be handled to prevent erosion at the permanent outfall and receiving stream. This information is lacking in the SWPPP submitted by Defendants.

**J. Erosion Prevention Controls do not Eliminate the Dislodging and Suspension of Soil in Water to the Maximum Extent Practicable.**

108. The Permit requires that "The erosion prevention controls shall be designed to eliminate to the maximum extent practicable the dislodging and suspension of soil in water. Sediment controls shall be designed to retain mobilized sediment on site to the maximum extent practicable." Permit, § 5.5.3.1(a). It states that, "All [stormwater] control measures must be properly selected, installed and maintained in accordance with … good engineering practices," and that "If periodic inspections or other information indicates a control has been used inappropriately, or incorrectly, the permittee must replace or modify the control."

109. The Rays are in violation of this provision of the permit because the erosion prevention controls at the site have not been designed to eliminate "to the maximum extent practicable the dislodging and suspension of soil in the water." Permit, § 5.5.3.1(a).

110. Furthermore, periodic inspections should have indicated that the controls were not effective and they should have been replaced or modified accordingly.

**K. Discharge Quality and Removal Violates the Permit.**

111. With respect to discharge quality, Section 6.3.2(c) of the Permit provides that:

> The stormwater discharge must not contain total suspended solids, turbidity, or color in such amounts or character that will result in any objectionable appearance compared to the turbidity or color of the receiving water, considering the nature and location of the water.

112. The discharge from the site is turbid, is an objectionable color compared to the usual turbidity or color of Sulphur Creek, and solids are not removed before discharge to surface waters, in violation of this provision of the Permit.

**L. Stormwater Discharges Cause Violation of State Water Quality Standard.**

113. The Permit "does not authorize stormwater or other discharges that would cause or contribute to a violation of a state water quality standard… Such discharges constitute a violation of this permit." Permit, §6.3.1.

114. The Permit provides as follow:

> Pursuant to T.C.A. § 69-3-115 of The Tennessee Water Quality Control Act of 1977, as amended: a) Any person who violates an effluent standard or limitation or a water quality standard established under this part (T.C.A. § 69-3-101, et. seq.); violates the terms or conditions of this permit; fails to complete a filing requirement; fails to allow or perform an entry, inspection, monitoring or reporting requirement; violates a final determination or order of the board, panel or commissioner; or violates any other provision of this part or any rule or regulation promulgated by the board, is subject to a civil penalty of up to ten thousand dollars ($10,000) per day for each day during which the act or omission continues or occurs. b) Any person unlawfully polluting the waters of the state or violating or failing, neglecting, or refusing to comply with any of the provisions of this part (T.C.A. § 69-3-101, et. seq.) commits a Class C misdemeanor. Each day upon which such violation occurs constitutes a separate offense.

115. The water use classification of Sulphur Creek and its tributaries is Fish and Aquatic Life, Recreation, Livestock Watering and Wildlife, and Irrigation.

116. The water use classification of Cumberland River in that section is Domestic Water Supply, Industrial Water Supply, Fish and Aquatic Live, Recreation, Livestock Watering and Wildlife, Irrigation and Navigation.

117. The criteria for the use of **Fish and Aquatic Life** are the following.

> Turbidity, Total Suspended Solids, or Color - There shall be no turbidity, total suspended solids, or color in such amounts or of such character that will materially affect fish and aquatic life. In wadeable streams, suspended solid levels over time should not be substantially different than conditions found in reference streams. Tennessee Rules, Chapter 400-40-03-3(d).

118. The criteria for the use of **Recreation** are the following.

> Total Suspended Solids, Turbidity, or Color - There shall be no total suspended solids, turbidity or color in such amounts or character that will result in any objectionable appearance to the water, considering the nature and location of the water. Tennessee Rules, Chapter 400-40-03-4(d).

119. Defendants discharge and has discharged stormwater that is high in total suspended solids, turbidity, and color in violation of these effluent standards and water quality standards and thus in violation of the Permit and is therefore subject to these penalties in addition to penalties under the Clean Water Act.

**M. Failure to Comply with Inspection Provisions.**

120. Section 5.5.3.9 of the Permit requires operators to perform twice weekly site inspections to ensure proper installation, maintenance, and overall effectiveness of EPSCs. Based on the results of the inspection, the site description identified in the SWPPP and pollution prevention measures identified in the SWPPP must be revised as appropriate. Permit 5.5.3.9 (f).

121. The quality and quantity of polluted stormwater leaving the site is evidence of ineffective EPSCs which should have been identified and corrected following inspections. An inspection should have shown the inspector that the EPSCs are ineffective at preventing runoff. There is no indication on the record that the site description identified in the SWPPP and pollution prevention measures identified in the SWPPP have been revised to improve the effectiveness of EPSCs, as required by the Permit.

122. The inspections being performed are faulty and fail to identify all problems and violations. They fail to identify corrective actions or the corrective actions are not being followed.

123. Therefore, RR Farms is in violation of this section of the Permit.

**N. Discharging Contaminated Stormwater Without a Permit and/or In Violation of a Permit.**

124. On at least the following occasion, the Rays violated the CWA by discharging contaminated stormwater from RR Farms to Sulphur Creek and its tributaries without a NPDES Permit authorizing the discharges and/or in violation of their storm water general construction permit:

October 15, 2018,
February 6, 2019,
February 20, 2020,
September 13, 2020,
February 27, 2021
July 11, 2021,
December 6, 2021,
December 7, 2022,
January 2, 2023,
January 3, 2023,
January 19, 2023.
June 29, 2023,
July 8, 2023,

August 3, 2023,
August 12, 2023, and
August 13, 2023.

125. The actions and omissions set out above are in violation of the Rays' Stormwater Permit and are thus violations of the Clean Water Act.

126. These violations have an adverse impact on waters of the United States and waters of the state, specifically of the unnamed tributaries, Sulphur Creek, and the Cumberland River, and on the recreational, aesthetic, environmental, and pecuniary interests of Riverkeeper's members in those waterways as set out in paragraphs 24 thru 36 herein above.

127. Defendants should be subject to an enforcement order or injunction ordering it to fully comply with all requirements of its NPDES Permit and the CWA.

128. Defendants should be subject to the assessment of civil penalties for these violations of the CWA pursuant to Section 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

129. For the purpose of assessing the maximum penalty which the Rays are liable, each day that the site has discharged pollutants in violation of its NPDES Permit and/or without a permit authorizing such discharges constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d). Each violation of the permit or regulations, as set out above, constitutes a separate violation as well as each discharge point discharging in violation of the permit or regulations.

## COUNT TWO
## VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT: OPERATING AN OPEN DUMP DUE TO FAILURE TO OBTAIN A LANDFILL PERMIT

130. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the paragraphs above as if fully set out in this count.

131. Defendants are in violation of section 4005 of RCRA, 42 U.S.C. § 6945, as the RR Farms Mass Grading constitutes an open dump, as that term is defined in 42 U.S.C. § 6903(14) and in 40 C.F.R. Part 257.

132. A landfill which does not comply with the NPDES permitting requirements is considered an open dump.

133. Pursuant to 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2), the operation of an open dump is prohibited.

134. The Site constitutes an open dump, pursuant to 40 C.F.R. § 257.3-3, because, on at least the dates set out herein, contaminated stormwater from the site has been discharged, and continues to be discharge into tributaries of Sulphur Creek, Sulphur Creek and the Cumberland River in violation of the requirements of the NPDES of the CWA and of RCRA, as set out above.

135. The requirement for Defendants to obtain the proper NPDES permit authorizing these discharges arose at the time they first knew or should have known that pollutants were being discharged into surface waters.

136. Defendants failed to comply with the CWA and RCRA by failure to obtain a NPDES permit for the operation of a Construction and Demolition Landfill.

137. The general permit coverage granted by the Notice of Coverage authorizes stormwater discharges associated with construction activities. It does not cover the operation of a landfill. Section 4005(a) of the RCRA, 42 U.S.C., §6945(a), prohibits the operation of an open dump for land disposal of solid waste.

138. To Plaintiff's knowledge and belief, the Rays receive excavated materials from construction sites and are paid a fee to dispose of the materials at the site. There are no legitimate construction purpose for the deposit of these materials at the site. The term "mass grading" does not cover the creation of a 200 foot tall mountain of dirt at the site which is, and will continue to be, eroding and discharging turbid and heavily silt laden stormwater runoff to waters of the State.

139. The site is best characterized as a landfill rather than a construction site. The only construction activity at the site is the relocation of a road for the cell tower and roads for the landfilling operation. These activities do not require huge amounts of fill material trucked in and deposited onsite.

140. The NOI for the issuance of a General Construction Permit is an attempt to avoid applying for a landfill permit and the more stringent regulations that apply to landfills.

141. For these reasons, the Rays are in violation of the RCRA and are subject to penalties, equitable relief, and other remedies provided by the Act.

**COUNT THREE**
**VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT: OPERATING AN OPEN DUMP DUE TO VIOLATIONS OF THE CLEAN WATER ACT**

142. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the paragraphs above as if fully set out in this count.

143. Defendants are in violation of section 4005 of RCRA, 42 U.S.C. § 6945, as the RR Farms Mass Grading constitutes an open dump, as that term is defined in 42 U.S.C. § 6903(14) and in 40 C.F.R. Part 257.

144. Landfill facilities failing to satisfy any of the criteria in §§ 257.1 through 257.4 or §§257.5 through 257.30 or §§257.50 through 257.107 are considered open dumps, which are prohibited under section 4005 of the Act. 40 CFR 257.1(a)(1).

145. Pursuant to 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2), the operation of an open dump is prohibited.

146. The Site constitutes an open dump, pursuant to 40 C.F.R. § 257.3-3, because, on at least the dates set out herein, contaminated stormwater from the site has been discharged, and continues to be discharge into tributaries of Sulphur Creek, Sulphur Creek and the Cumberland River in violation of the requirements of its Stormwater Permit, the NPDES of the CWA, and of RCRA.

147. The CWA forbids the discharge of any pollutant into waters of the United States except in compliance with a NPDES permit.

148. The CWA violations set forth in Count I are in noncompliance with the Rays' NPDES permit.

149. A landfill facility may not cause a discharge of pollutants into waters of the United States that is in violation of the requirements of the National Pollution Discharge Elimination System (NPDES) under section 402 of the Clean Water Act, as amended (33 USC 1344) 40 CFR 257.3-3.

150. For these reasons, the Rays are in violation of the RCRA prohibition on the operation of an open dump and are subject to penalties, equitable relief, and other remedies provided by the Act.

**COUNT FOUR**
**INJUNCTIVE RELIEF**

151. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the above paragraphs as if fully set out in this count.#

152. The violations set out herein will continue unless this Court enjoins Defendants from continuing to violate its permit.

153. These violations have caused irreparable injury to some of Riverkeeper's members. Riverkeeper has no adequate remedy at law for the injuries caused to its members by Defendant's ongoing violations in that Riverkeeper would be forced to bring repeated and burdensome actions for each new injury to its interests if Defendant's ongoing violations are not enjoined.

154. An injunction will be in the public's interest in this case. Because Defendant is in continuing violation of the law, the equities for an injunction weigh in Riverkeeper's favor.

155. Therefore, Riverkeeper brings this cause of action to enjoin Defendant from engaging in any other affirmative act or conduct which would contribute to further permit violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Riverkeeper respectfully requests that the Court grant the following relief:

a. Plaintiff Riverkeeper requests the Court render a judgment finding and declaring that the Defendants, Crystal Ray and Ricky Ray, have violated and are in violation of the CWA, 33 U.S.C. §1311(a), Tennessee NPDES rules, and their permit.

b. Plaintiff Riverkeeper requests the Court render a judgment finding and declaring that the Defendants, Crystal Ray and Ricky Ray, have violated and are in violation of the RCRA, 42 U.S.C. §6972(a)(1)(A).

c. Plaintiff Riverkeeper requests and petitions this Court to enjoin the violations and any and all illegal conduct by Defendants, Crystal Ray and Ricky Ray, as set out and alleged in Counts One thru Three above and issue an injunction compelling Defendants, Crystal Ray and Ricky Ray, to remedy the illegal discharges of pollutants into waters of the United States, to stop dumping of soil, rocks, and other material onsite, to remove illegally dumped soil, rocks, and otRher material and restore the site to its original condition, and to get individual NPDES stormwater permits, not the general permit, at each outfall.

d. Plaintiff Riverkeeper requests and petitions this Court to assess a $64,618.00 (sixty-four thousand, six hundred eighteen dollars) civil penalty (*see* 40 CFR § 19) against Defendants, Crystal Ray and Ricky Ray, for each violation and each day of continuing

violation of the CWA for which Defendants are found liable pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a).

e. Plaintiff Riverkeeper requests and petitions this Court for an award of litigation costs, including reasonable attorney's fees and expert fees, as authorized by 33 U.S.C. § 1365(d) and 42 U.S.C. § 6972(e).

f. For such other, further or more general relief as this Court may deem appropriate.

Respectfully submitted this the 27th day of August 2024.

s/ Mark E. Martin
Mark E. Martin
Alabama Bar No: ASB-9361-A41M
*Admission Requested Pro Hac Vice*
P.O. Box 1486
Oneonta, AL 35121
Telephone: (205) 516-9350
mmartin@markemartin.com

Andrea Taylor McKellar (BPR #19618)
McKellar Law Group, PLLC
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9828
Facsimile: 615.866.1278
andie@.mckellarlawgroup.com

***Attorneys for Plaintiff Tennessee Riverkeeper, Inc.***