**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs** | ) | **No. 3:23-00878** |
| | ) | **Crenshaw/Newbern** |
| | ) | |
| **CRYSTAL RAY, and** | ) | |
| **RICKY RAY, dba RR FARMS** | ) | |
| **aka, RR FARMS MASS GRADING,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REQUESTED JURY CHARGES**

**Plaintiff request(s) the jury be charged as set out on the following pages.**

Respectfully submitted,

**/s Mark E. Martin**
Mark E. Martin
Attorney for Plaintiff
Alabama Bar No: ASB-9361-A41M
P.O. Box 1486
Oneonta, AL 35121
Telephone: (205) 516-9350
mmartin@markemartin.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing, and all exhibits thereto, if any, has been served on the below-listed person(s), via the Court's CM/ECF electronic filing system, on the 12th day of May, 2025.

Mark E. Martin
P.O. Box 1486
Oneonta, AL 35121
Telephone: (205) 516-9350
mmartin@markemartin.com

Andrea Taylor McKellar (BPR #19618)
McKellar Law Group, PLLC
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9828
Facsimile: 615.866.1278
andie@.mckellarlawgroup.com

Gregory L. Cashion
Smith Cashion & Orr, PLC
3100 West End Avenue
One American Center, Suite 800
Nashville, Tennessee 37203
(615) 742-8553
(615) 742-8556 Facsimile
gcashion@smithcashion.com

William L. Fitts
Smith Cashion & Orr, PLC
3100 West End Avenue
One American Center, Suite 800
Nashville, Tennessee 37203
(615) 742-8553
(615) 742-8556 Facsimile
wfitts@smithcashion.com

*/s/ Mark E. Martin*

**<u>Requested Charge 1</u>. Organizational Standing**

In order to bring a lawsuit in Federal Court a plaintiff must show that it has standing. Standing is a requirement under Article III of the United States Constitution.

Tennessee Riverkeeper, Inc., is the Plaintiff. It must show that it has standing to bring suit on behalf of its members by showing these three facts:

(a) that its members would otherwise have standing to sue in their own right;

(b) the interests it seeks to protect are germane to the organizations purpose; and

(c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

You are instructed that Tennessee Riverkeeper, Inc. is a non-profit membership corporation that is dedicated to the preservation, protection, and defense of the Tennessee and Cumberland Rivers and their tributaries and that actively supports effective enforcement and implementation of environmental laws, including the Federal Clean Water Act and the Federal Resource Conservation and Recovery Act on behalf and for the benefit of its members.

**<u>Requested Charge 2.</u> Individual Standing.**

To demonstrate standing, a plaintiff must meet three requirements:

First and foremost, there must be proven an injury in fact — a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical.

Second, there must be causation — a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.

Third, there must be redressability — a likelihood that the requested relief will redress the alleged injury.

The injury in fact must be an "invasion of a legally protected interest that is `concrete and particularized.'" The injury must affect the plaintiff in a personal and individual way. This concept of injury is interpreted broadly. It is sufficient for a plaintiff to show an aesthetic, recreational, or economic injury.

Note:
*See, Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. *Wolff v. Cash 4 Titles,* 351 F.3d 1348, 1353 (11th Cir. 2003).

To establish Article III standing in a case brought pursuant to the Clean Water Act, a plaintiff must show (1) injury in fact, (2) traceability, and (3) redressability. *See generally Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury in fact must be an "invasion of a legally protected interest that is `concrete and particularized.'" *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 156 (4th Cir. 2000) (en banc). The injury must affect the plaintiff in a personal and individual way. *Id.* (finding standing for plaintiff who owned lake in path of defendant's toxic chemical discharge and testified his family swam and fished less in the lake and his property value declined). A plaintiff may show an aesthetic, recreational, or economic injury. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services,* 528 U.S. 167, 181-83, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (noting that plaintiffs drove over river, fished, camped, swam, and picnicked in and near river and one member of plaintiff's organization testified that her home was located near defendant's facility and she believed her property value was diminished because of the pollutant discharges from the facility); *American Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 518-19 (4th Cir. 2003) (considering economic impact of pollutant discharges on a plaintiff's river guide business); *Natural Resources Defense Council v. Southwest Marine, Inc.,* 236 F.3d 985, 994 (9th Cir. 2000) (plaintiffs testified about aesthetic and recreational use of water); *Sierra Club v. Cedar Point Oil Co.,* 73 F.3d 546, 556 (5th Cir. 1996) (same); *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 72-73 (3d Cir. 1990) (same).

**<u>Requested Charge 3.</u>** **Clean Water Act**

The Clean Water Act [(Act), 86 Stat. 816, 33 U.S.C. § 1251 *et seq*. (1982 ed. and Supp. III)] was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." [§ 1251(a)] In order to achieve these goals, § 301(a) of the Act makes unlawful the discharge of any pollutant into navigable waters except as authorized by specified sections of the Act. [33 U.S.C. § 1311(a)]. One of these specified sections is § 402, which establishes the National Pollutant Discharge Elimination System (NPDES). [33 U.S.C. § 1342]. Pursuant to § 402(a), the Administrator of the Environmental Protection Agency (EPA) may issue permits authorizing the discharge of pollutants in accordance with specified conditions. [§ 1342(a)]. Pursuant to § 402(b), each State may establish and administer its own permit program if the program conforms to federal guidelines and is approved by the Administrator. [§ 1342(b)]. The Act calls for the Administrator to suspend the issuance of federal permits as to waters subject to an approved state program. [§ 1342(c)(1).] The holder of a federal NPDES permit is subject to enforcement action by the Administrator for failure to comply with the conditions of the permit. The Administrator's enforcement arsenal includes administrative, civil, and criminal sanctions.[§ 1319]. The holder of a state NPDES permit is subject to both federal and state enforcement action for failure to comply. [§§ 1319, 1342(b)(7)]. In the absence of federal or state enforcement, private citizens may commence civil actions against any person "alleged to be in violation of" the conditions of either a federal or state NPDES permit. [§ 1365(a)(1)]. If the citizen prevails in such an action, the court may order injunctive relief and/or impose civil penalties payable to the United States Treasury. [§ 1365(a).]

In this case the Plaintiffs have brought an action under provisions of the Federal Clean Water Act claiming that the Defendants, while operating a Construction and Demolition Landfill, violated provisions of the Federal Clean Water Act by its failure to comply with its stormwater permit and discharging pollutants into tributaries of Sulphur Creek.

You are instructed that the Defendants were issued a General Construction Stormwater Permit by the State of Tennessee for the operation of a construction site.

Plaintiffs contend that the defendants violated this permit by discharging pollutants into tributaries of Sulphur Creek in the form of storm water runoff contaminated with mud and sediment.

The Defendants deny that they discharged pollutants to the tributaries of Sulphur Creek.

To establish a CWA violation, the plaintiffs must prove each of the following facts by a preponderance of the evidence:

(1) there has been a discharge;

(2) of a pollutant;

(3) into waters of the United States; [or into navigable waters.]

(4) from a point source;

(5) without (or in violation of) a NPDES permit that allows such discharge of pollutants.

*State of Ga. v. City of East Ridge,* 949 F.Supp. 1571 (N.D.Ga. 1996) (citing Ninth Circuit and D.C. Circuit cases); *see Driscoll v. Adams,* 181 F.3d 1285 (11th Cir. 1999).
*Parker v. Scrap Metal Processors, Inc*., 386 F.3d 993 (11th Cir.2004).

The term "**discharge of a pollutant**" means any addition of any pollutant to navigable waters from any point source, [Sec. 1362 (12)]

The term “**pollutant**” includes dirt and sediment.

"**navigable waters**," is defined as "waters of the United States." [33 U.S.C. § 1362(7)].The term

"navigable" has little importance, and "navigable waters" includes tributaries of waters that can be navigated. [*United States v. Eidson,* 108 F.3d 1336, 1342 (11th Cir. 1997)]. Thus, "ditches and canals, as well as streams and creeks" are navigable waters if they are tributaries of a larger body of water.[ *Id.; see also Driscoll,* 181 F.3d at 1291; *United States v. Ashland Oil & Transp. Co.,* 504 F.2d 1317, 1325 (6th Cir. 1974)]

A "**point source**" includes a construction site and a landfill.

**<u>Requested Charge 4.</u> Penalties under the Clean Water Act.**

It is for the jury to determine the number of days of violations of the clean water act which have been proven by the Plaintiffs by a preponderance of the evidence. There may be multiple violations on a single day and each one counts as a separate violation.

[See *Atlantic States v. Tyson Foods*, 897 F.2d 1128 (11th Cir. 1990).]

It is for the judge to determine the penalty to be set for the Clean Water Act violations and the jury should not concern itself with the amount of penalties under this section of Plaintiffs' Complaint.

[See *Tull v. United States*, 481 U.S. 412 (1987).]

**<u>Requested Charge 5:</u> Count One. A. Failure to Conduct and Submit a Site Assessment.**

The Plaintiff contends the Rays have violated the Clean Water Act by their failure to abide by the permit requirement to file a site assessment and/or by failure to update the site assessment.

The Rays acquired a Tennessee General Construction Stormwater Permit for operations at their site. This permit requires that the permit applicant must perform site assessments at each outfall draining 10 or more acres. Site assessments must cover the entire disturbed area and occur within 30 days of construction commencing at each portion of the site that drains the qualifying acreage.

Section 1.4.2 of the Permit states that a Stormwater Pollution Prevention Plan must be developed, implemented and updated according to the requirements in Part 5 and Section 6.4.1.

The permit requires that a quality assurance of Erosion Prevention and Sediment Controls (EPSCs) be done by performing site assessments. At a minimum, site assessments should be performed to verify the installation, functionality and performance of the Erosion Prevention and Sediment Controls measures described in the Storm Water Pollution Prevention Plan. Permit Part 5.5.3

Each discharge of pollutants caused or contributed to by the failure to conduct and submit a required site assessment or an updated site assessment is a separate violation of the permit and the CWA.

**<u>Requested Charge 6:</u> Count One, B. The SWPPP's Erosion and Sediment Control Designs Do Not Comply With Permit Requirements.**

The General Construction Stormwater Permit requires that Erosion Prevention and Sediment Control (EPSC) measures shall be designed to minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm (the design storm).

Plaintiff contends that because The EPSC measures at the Site do not minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm they were not designed to minimize erosion and maximize sediment removal and are therefore in violation of the Permit.

Each discharge of pollutants caused or contributed to by the failure to conduct and submit a required site assessment or an updated site assessment is a separate violation of the permit and the CWA.

**<u>Requested Charge 7:</u> Count One, C. Failure to Design, Install and Maintain Erosion Prevention and Sediment Controls Appropriate for the Site Conditions.**

The General Construction Stormwater Permit requires erosion prevention and sediment control. Permit, § 4.1.1.

It states that the permitee is required to:

Design, install and maintain effective erosion and sediment controls to minimize the discharge of pollutants. At a minimum, such controls must be designed, installed and maintained to:
1) Control stormwater volume and velocity to minimize soil erosion in order to minimize pollutant discharges;
2) Control stormwater discharges, including both peak flowrates and total stormwater volume, to minimize channel and streambank erosion and scour in the immediate vicinity of discharge points;
3) Minimize the amount of soil exposed during construction activity;
4) Minimize the disturbance of steep slopes;
5) Minimize sediment discharges from the site. The design, installation and maintenance of erosion and sediment controls must address factors such as the amount, frequency, intensity and duration of precipitation and the range of soil particle sizes expected to be present on the site.

Plaintiff contends that the Defendants have failed to utilize stormwater control and erosion prevention measures to control stormwater volume and velocity and control stormwater discharges, as required by Permit Section 4.1.1 (1) and (2).

Plaintiff contends that the Defendants have constructed steep slopes which have been allowed to erode and create rills and gullies.

Plaintiff contends that the Defendants failed to minimize the amount of soil exposed during construction activity, in violation of Permit Section 4.1.1.(5).

Plaintiff contends that, for a long period of time, the Defendants have exposed and left bare the soil on nearly the entire site.

Plaintiff contends that, because the SWPPP for the Development was not designed "to minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm," it is not designed "to minimize pollution discharges" or to "[m]inimize sediment discharges from the site," as required by Permit Section 4.1.1 (5).

Each discharge of pollutants caused or contributed to by the failure to design, install and maintain effective erosion and sediment controls to minimize the discharge of pollutants is a separate violation of the permit and the CWA.

**<u>Requested Charge 8:</u>** **Count One, D. Failure to Apply Best Practicable Control Technology.**

Section 4.1 of the Permit requires "Any point source authorized by this general permit must achieve, at a minimum, the effluent limitations representing the degree of effluent reduction attainable by application of best practicable control technology ("BPT") currently available."

Plaintiff contends that Defendants are in violation of this Section of the Permit because the technology that the defendants utilized to control sediment runoff was not the BPT currently available.

Each discharge of pollutants caused or contributed to by the failure to achieve, at a minimum, the effluent limitations representing the degree of effluent reduction attainable by application of best practicable control technology ("BPT") currently available is a separate violation of the permit and the CWA.

**Requested Charge 9: Count One, E. Failure To Design, Install, Implement and Maintain Effective Pollution Prevention Measures to Minimize the Discharge of Sediment and Other Pollutants.**

Section 4.1.4. of the Permit requires "The permittee must design, install, implement, and maintain effective pollution prevention measures to minimize the discharge of sediment and other pollutants.

Plaintiff alleges that the discharge of muddy, highly turbid water from the site demonstrates that effective pollution prevention measures were not designed, installed, implemented, and/or maintained, in violation of this provision of the Permit.

Each discharge of pollutants caused or contributed to by a permit violation of failure to design, install, implement, and maintain effective pollution prevention measures to minimize the discharge of sediment and other pollutants is a separate violation of the permit and the CWA.

**Requested Charge 10: Count One, F. Failure to Maintain Effective Best Management Practices.**

Section 5.1 of the Permit requires that a Stormwater Pollution Prevention Plan (SWPPP) must be prepared and submitted along with the NOI as required in Section 1.4.2. The primary permittee must implement the SWPPP and maintain effective Best Management Practices (BMPs) from commencement of construction activity until permanent stabilization is complete, or until the permittee does not have design or operational control of any portion of the construction site.

Plaintiffs contend that Defendants have violated this Permit provision by failing to maintain effective BMPs from commencement of construction activity until permanent stabilization is complete.

Each discharge of pollutants caused or contributed to by the failure to maintain effective BMPs from commencement of construction activity until permanent stabilization is complete is a separate violation of the permit and the CWA.

**Requested Charge 11:** **Count One, G. Failure to Provide a Description of All Construction Activities at the Site.**

Section 5.5.1.a. of the Permit requires that the SWPPP shall provide a description of all construction activities at the site.

The SWPPP submitted by RR Farms describes the construction activities as follows:

> The proposed project shall consist of the deposition of fill material on the subject site and grading the site according to the plans. Removal of trees and undergrowth will be necessary. The cell tower utilities and driveway will be relocated to the side of the property to allow for future development. Construction activities at the site include installation of sediment control measures, grubbing and stockpiling of topsoil, cutting and filling as necessary to bring the site to grade, installation of drainage conveyance infrastructure, finish grading, paving, landscaping, and final stabilization."

The site description in the Notice of Intent states merely "Mass grading and driveway for cell tower."

Neither of these documents states that the site will receive and permanently dispose of massive amounts of excavated soil from construction sites. It was not disclosed that RR Farms

would create two huge mountains of soil, concrete, and rock, each raised approximately 200 feet above the original elevation of the site.

Each discharge of pollutants caused or contributed to by the failure to provide a description of all construction activities at the site is a separate violation of the permit and the CWA.

**Requested Charge 12: Count One, H. Failure to Provide Slope and Drainage Information.**

Section 5.5.1.c. of the Permit requires that the SWPPP shall provide Slope and Drainage Information, including "a description of the topography of the site, including an estimation of percent slope and delineation of drainage area (acres) serving each outfall. Drainage area estimates shall include off-site drainage, if applicable."

Plaintiffs contend that slope and drainage information as provided by the Rays is for the site as a whole and is not designated for each outfall.

Each discharge of pollutants caused or contributed to by the failure to provide Slope and Drainage Information, including a description of the topography of the site, and an estimation of percent slope and delineation of drainage area (acres) serving each outfall is a separate violation of the permit and the CWA.

**Requested Charge 13: Count One, I. Failure to Provide a Description of How Runoff Will Be Handled.**

Section 5.5.1.e. of the Permit requires that the SWPPP shall provide a description of how the runoff will be handled to prevent erosion at the permanent outfall and receiving stream.

Plaintiff contends that this information is lacking in the SWPPP submitted by Defendants.

Each discharge of pollutants caused or contributed to by the failure to provide a description of how the runoff will be handled to prevent erosion at the permanent outfall and receiving stream is a separate violation of the permit and the CWA.

**<u>Requested Charge 14:</u> Count One, J. Erosion Prevention Controls do not Eliminate the Dislodging and Suspension of Soil in Water to the Maximum Extent Practicable.**

The Permit requires that "The erosion prevention controls shall be designed to eliminate to the maximum extent practicable the dislodging and suspension of soil in water. Sediment controls shall be designed to retain mobilized sediment on site to the maximum extent practicable." Permit, § 5.5.3.1(a).

Plaintiff contends that the Rays are in violation of this provision of the permit because the erosion prevention controls at the site have not been designed to eliminate "to the maximum extent practicable the dislodging and suspension of soil in the water."

Each discharge of pollutants caused or contributed to by the failure to designed the erosion prevention controls to eliminate to the maximum extent practicable the dislodging and suspension of soil in water or to retain mobilized sediment on site to the maximum extent practicable is a separate violation of the permit and the CWA.

**<u>Requested Charge 15:</u> Count One, K. Discharge Quality and Removal Violates the Permit.**

Section 6.3.2(c) of the Permit provides that:

> The stormwater discharge must not contain total suspended solids, turbidity, or color in such amounts or character that will result in any objectionable appearance compared to the turbidity or color of the receiving water, considering the nature and location of the water.

Plaintiffs contend that the discharge from the site is turbid, is an objectionable color compared to the usual turbidity or color of Sulphur Creek, and solids are not removed before discharge to surface waters, in violation of this provision of the Permit.

Each discharge of pollutants that contains total suspended solids, turbidity, or color in such amounts or character that will result in any objectionable appearance compared to the turbidity or color of the receiving water, considering the nature and location of the water is a separate violation of the permit and the CWA.

**<u>Requested Charge 16:</u> Count One, L. Stormwater Discharges Cause Violation of State Water Quality Standard.**

The Permit "does not authorize stormwater or other discharges that would cause or contribute to a violation of a state water quality standard… Such discharges constitute a violation of this permit." Permit, §6.3.1.

The water use classification of Sulphur Creek and its tributaries is Fish and Aquatic Life, Recreation, Livestock Watering and Wildlife, and Irrigation.

The water use classification of Cumberland River in that section is Domestic Water Supply, Industrial Water Supply, Fish and Aquatic Live, Recreation, Livestock Watering and Wildlife, Irrigation and Navigation.

The criteria for the use of **Fish and Aquatic Life** are the following.

> Turbidity, Total Suspended Solids, or Color - There shall be no turbidity, total suspended solids, or color in such amounts or of such character that will materially affect fish and aquatic life. In wadeable streams, suspended solid levels over time should not be substantially different than conditions found in reference streams. Tennessee Rules, Chapter 400-40-03-3(d).
>
> The criteria for the use of **Recreation** are the following.
>
> Total Suspended Solids, Turbidity, or Color - There shall be no total suspended solids, turbidity or color in such amounts or character that will result in any objectionable appearance to the water, considering the nature and location of the water. Tennessee Rules, Chapter 400-40-03-4(d).

Plaintiff contends that the defendants discharge and have discharged stormwater that is high in total suspended solids, turbidity, and color in violation of these effluent standards and water quality standards and thus in violation of the Permit.

Each discharge of pollutants that that would cause or contribute to a violation of a state water quality standard is a separate violation of the permit and the CWA.

**<u>Requested Charge 17:</u> Count One, M. Failure to Comply with Inspection Provisions.**

Section 5.5.3.9 of the Permit requires operators to perform twice weekly site inspections to ensure proper installation, maintenance, and overall effectiveness of EPSCs. Based on the results of the inspection, the site description identified in the SWPPP and pollution prevention measures identified in the SWPPP must be revised as appropriate. Permit 5.5.3.9 (f).

Plaintiff contends that RR Farms is in violation of this section of the Permit due to failure to perform twice weekly site inspections.

Each discharge of pollutants due to failure to perform twice weekly site or the failure to revise the site description identified in the SWPPP or the pollution prevention measures identified in the SWPPP is a separate violation of the permit and the CWA.

**<u>Requested Charge 18:</u> Count One, N. Discharging Contaminated Stormwater Without a Permit and/or In Violation of a Permit.**

Plaintiffs contend that on at least the following occasion, the Rays violated the CWA by discharging contaminated stormwater from RR Farms to Sulphur Creek and its tributaries without a NPDES Permit authorizing the discharges and/or in violation of their storm water general construction permit:

October 15, 2018,
February 6, 2019,
February 20, 2020,
September 13, 2020,
February 27, 2021
July 11, 2021,
December 6, 2021,
December 7, 2022,
January 2, 2023,
January 3, 2023,
January 19, 2023.
June 29, 2023,
July 8, 2023,
August 3, 2023,
August 12, 2023, and
August 13, 2023.

Each discharge of pollutants without a NPDES Permit authorizing the discharges and/or in violation of their storm water general construction permit is a separate violation of the permit and the CWA.

**Count Two: Violations of the Resource Conservation and Recovery Act: Operating an Open Dump Due to Failure to Obtain a Landfill Permit**

No jury instructions are being submitted for this Count because it is believed that the issue will be decided by the Court. It is no longer an issue in this case as to whether or not the defendants' site is a Construction and Demolition Landfill. The Rays have admitted they are operating a Construction and Demolition Landfill. See, Doc. 71, p9. ("Therefore, it appears there can be no issue as to whether the Property was a landfill under this RCRA definition…"). Whether they should have obtained permit coverage as a landfill is a legal issue now before the Court on the Plaintiff's Motion for Summary Judgment.

**<u>Requested Charge 19:</u> Count Three: Violations of the Resource Conservation and Recovery Act: Operating an Open Dump Due to Violations of the Clean Water Act**

Plaintiff contends the Site constitutes an open dump, pursuant to 40 C.F.R. § 257.3-3, because, on at least the dates set out herein, contaminated stormwater from the site has been discharged, and continues to be discharge into tributaries of Sulphur Creek, Sulphur Creek and the Cumberland River in violation of the requirements of its Stormwater Permit, the NPDES of the CWA, and of RCRA.

Landfill facilities failing to satisfy any of the criteria in §§ 257.1 through 257.4 or §§257.5 through 257.30 or §§257.50 through 257.107 are considered open dumps. 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2).

Open dumps are prohibited under section 4005 of the Act. 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2).

One of the criteria is that a landfill facility may not cause a discharge of pollutants into waters of the United States that is in violation of the requirements of the National Pollution Discharge Elimination System (NPDES) under section 402 of the Clean Water Act, as amended (33 USC 1344). 40 CFR 257.3-3.

The CWA forbids the discharge of any pollutant into waters of the United States except in compliance with a NPDES permit.

Each day of operation of an open dump is a separate violation of RCRA.