**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.,**<br><br>**Plaintiff,**<br><br>**vs**<br><br><br>**CRYSTAL RAY, and**<br>**RICKY RAY, dba RR FARMS**<br>**aka, RR FARMS MASS GRADING,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **No. 3:23-00878** |

**PRETRIAL ORDER**

1. The pleadings are amended to conform to the Pretrial Order and the Pretrial Order supplants the pleadings.

2. **The Basis for Jurisdiction in this Court.** This Court has subject matter jurisdiction over the claims set forth in this Complaint by virtue of Section 505(a)(1) of the Federal Water Pollution Control Act ("FWPCA") , also known as the Clean Water Act ("CWA"), 33 U.S.C. §1365 (a)(1), section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), and by virtue of 28 U.S.C. § 1331 (actions arising under the Constitution or laws of the United States).

The relief requested is authorized pursuant to 28 U.S.C. § 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration); 33 U.S.C. § 1319(b), 1365(a) (injunctive relief); and 33 U.S.C. § 1319(d), 1365(a) (civil penalties).

Venue is appropriate in the Middle District of Tennessee pursuant to 33 U.S.C. § 1365(c)(1) and because the acts, omissions, and/or violations complained of herein occurred, and continue to occur, within Nashville, Davidson County Tennessee.

3. **<u>Plaintiff's Theory of the Case:</u>**

The Rays were granted coverage under the Tennessee General Permit for Discharges of Stormwater Associated with Construction Activities, Permit Number TNR100000 ("NPDES Permit", "Stormwater Permit", or "Permit"), which authorizes operators of point source discharges of stormwater associated with construction activities into waters of the State of Tennessee to discharge stormwater associated with construction activities in accordance with the permit monitoring and reporting requirements, effluent limitations, and other provisions from permit parts 1 through 10 from the subject outfalls to waters of the State of Tennessee.

Count One alleges the Rays violated the CWA by operating the Site in a manner that discharges pollutants to the waters of the United States and waters of the state in violation of the Permit.

Count Two alleges the Rays violated the RCRA by operating a Construction and Demolition Landfill without first obtaining a solid waste disposal permit.

Count Three alleges the Rays violated the RCRA by operating an open dump. Landfill facilities failing to satisfy any of the criteria in §§ 257.1 through 257.4 or §§257.5 through 257.30 or §§257.50 through 257.107 are considered open dumps, which are prohibited under section 4005 of the Act. 40 CFR 257.1(a)(1). Pursuant to 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2), the operation of an open dump is prohibited. The Site constitutes an open dump, pursuant to 40 C.F.R. § 257.3-3, because, on at least the dates set out herein, contaminated stormwater from the site has been discharged, and continues to be discharged into tributaries of Sulphur Creek, Sulphur Creek and the Cumberland River in violation of the requirements of its Stormwater Permit, and the NPDES of the CWA.

4. **Defendants' Theory:**

Defendants contend that they have not violated Federal Law with respect to all three of Platintiff's counts. Specifically with respect to the claims against Defendant Crystal Ray, Defendants contend that, because Ms. Ray's ownership in the real property at issue was transferred more than a year prior to this action, she cannot be held responsible for any alleged violations after this date, and must therefore be dismissed from this action.

Defendants maintain that any and all alleged violations of the Permit or Federal law occurred "wholly in the past" and are therefore non-actionable violations under the Clean Water Act provisions governing citizen's suits. Because Plaintiff cannot prove violations of the Permit or Federal law subsequent to the filing of this lawsuit, its claims are moot and the action should be dismissed.

Regarding the Resource Conservation Recovery Act claims, Defendants contend that they were not required to apply for and receive any type of landfill permit, as Tennessee law provides a clear exception for the type of material deposited on the real property at issue. Because Tennessee law did not require a landfill permit, Defendants did not violate any permitting requirement under the Resource Conservation Recovery Act.

Additionally, Defendants maintain that Plaintiff does not have standing to bring this suit because they have shown no actual or imminent injury or that Defendants' actions have any causal relationship to said injuries. Defendants also argue that Plaintiff's proof fails on all its alleged violations of the Permit and Federal law due to the failure of its expert witness to provide allowable expert testimony and other missing elements.

5. **<u>Statement of the Issues for the jury:</u>**

1. Did Defendant Crystal Ray have the requisite control of the property during the relevant period to subject her to a Citizen's Suit?
2. Did Plaintiff establish an injury in fact?
3. Were Defendants actions the proximate cause and cause in-fact of Plaintiff's injuries?
4. Did the Defendants violate the Clean Water Act?
5. Did the Defendants discharge pollutants?
6. Did the Defendants' discharge reach navigable waters?
7. Is the discharge of pollutants continuing and ongoing?
8. Is the discharge of pollutants in violation of a NPDES permit?
9. Did the Defendants violate the NPDES permit by failure to conduct and submit a required site assessment or an updated site assessment?
10. Did the Defendants violate the NPDES permit by failure to design Erosion Prevention and Sediment Control (EPSC) measures to minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm (the design storm)?
11. Did the Defendants violate the NPDES permit by failure to utilize stormwater control and erosion prevention measures to control stormwater volume and velocity and control stormwater discharges, as required by Permit Section 4.1.1 (1) and (2)?
12. Did the Defendants violate the NPDES permit by failure to achieve, at a minimum, the effluent limitations representing the degree of effluent reduction attainable by application of best practicable control technology ("BPT") currently available?

13. Did the Defendants violate the NPDES permit by failure to design, install, implement, and maintain effective pollution prevention measures to minimize the discharge of sediment and other pollutants?
14. Did the Defendants violate the NPDES permit by failure to implement the Stormwater Pollution Prevention Plan (SWPPP) and maintain effective Best Management Practices (BMPs) from commencement of construction activity until permanent stabilization is complete?
15. Did the Defendants violate the NPDES permit by failure to provide in their SWPPP a description of all construction activities at the site?
16. Did the Defendants violate the NPDES permit by failure to provide in their SWPPP Slope and Drainage Information, including "a description of the topography of the site, including an estimation of percent slope and delineation of drainage area (acres) serving each outfall. Drainage area estimates shall include off-site drainage, if applicable?"
17. Did the Defendants violate the NPDES permit by failure to provide in their SWPPP a description of how the runoff will be handled to prevent erosion at the permanent outfall and receiving stream?
18. Did the Defendants violate the NPDES permit by failure to design erosion prevention controls to eliminate to the maximum extent practicable the dislodging and suspension of soil in water and to retain mobilized sediment on site to the maximum extent practicable?
19. Did the Defendants violate the NPDES permit because its stormwater discharge contains total suspended solids, turbidity, or color in such amounts or character that

will result in any objectionable appearance compared to the turbidity or color of the receiving water, considering the nature and location of the water?

20. Did the Defendants violate the NPDES permit because its stormwater discharge would cause or contribute to a violation of a state water quality standard?

21. Did the Defendants violate the NPDES permit due to failure to perform twice weekly site inspections to ensure proper installation, maintenance, and overall effectiveness of EPSCs and/or to, based on the results of the inspection, revise the site description identified in the SWPPP and pollution prevention measures identified in the SWPPP as appropriate?

22. Did the Rays violate the CWA by discharging contaminated stormwater from RR Farms to Sulphur Creek and its tributaries without a NPDES Permit authorizing the discharges and/or in violation of their storm water general construction permit on the following occasions, or any of them:

October 15, 2018,
February 6, 2019,
February 20, 2020,
September 13, 2020,
February 27, 2021
July 11, 2021,
December 6, 2021,
December 7, 2022,
January 2, 2023,
January 3, 2023,
January 19, 2023.
June 29, 2023,
July 8, 2023,
August 3, 2023,
August 12, 2023, and
August 13, 2023.

23. Do the Clean Water Act violations alleged herein, if proven, cause the Rays site to constitute a prohibited open dump?

24. Were the proven violations “wholly past”?

25. Have the Rays violated and are in violation of the CWA?

26. Have the Rays violated and are in violation of the RCRA?

**Issues for the Court**

27. Did the Rays operate and continue to operate a Landfill without first obtaining a required permit?

28. Were the Rays required to obtain a landfill permit under Tennessee law?

29. Are Plaintiff’s experts opinions allowable expert testimony?

30. Should the Rays be enjoined from continuing the violations and any and all illegal conduct?

31. Should the Rays be enjoined and compelled to remedy the illegal discharges of pollutants into waters of the United States, to stop dumping of soil, rocks, and other material onsite, to remove illegally dumped soil, rocks, and other material and restore the site to its original condition?

32. Should the Rays be assessed a civil penalty for each violation of up to $64,618.00 (sixty-four thousand, six hundred eighteen dollars) for each violation and each day of violation?

33. Should the Plaintiff be awarded the costs of litigation, including reasonable attorney fees and expert fees?

34. Should the Plaintiff be awarded such other, further, or more general relief as the Court may deem appropriate?

**6. Statement of the Relief Sought**

a. A judgment finding and declaring that the Defendants have violated and are in violation of the CWA.

a. A judgment finding and declaring that the Defendants have violated and are in violation of the RCRA.

b. A judgment finding and declaring that the Defendants are operating a Landfill for which they should obtain and should have obtained a solid waste disposal permit.

c. A judgment finding and declaring that the Defendants are and have been operating an open dump which is prohibited by RCRA.

d. A judgment and order enjoining the violations and any and all illegal conduct by Defendants,

e. A judgment and order compelling Defendants to remedy the illegal discharges of pollutants into waters of the United States,

f. A judgment and order compelling Defendants to stop dumping of soil, rocks, and other material onsite,

g. A judgment and order compelling Defendants to remove illegally dumped soil, rocks, and other material.

h. A judgment and order compelling Defendants to restore the site to its original condition.

i. A judgment and order compelling Defendants to get individual NPDES stormwater permits, not the general permit, at each outfall.

j. An judgment and order assessing a civil penalty of up to $64,618.00 (sixty four thousand, six hundred eighteen dollars) for each violation and each day of continuing violation of the CWA for which Defendants are found liable.

a. A judgment and order awarding Plaintiff litigation costs, including reasonable attorney's fees and expert fees.

b. Such other, further or more general relief as this Court may deem appropriate.

**7. <u>A summary of any anticipated evidentiary disputes:</u>**

None outside of Motion to Exclude Expert

**8. <u>An estimate of the anticipated length of the trial.</u>**

Plaintiff believes the trial will last four days.

IT IS SO ORDERED.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE