**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:23-cv-00878** |
| | ) | |
| **CRYSTAL RAY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court in this environmental citizen suit is Plaintiff Tennessee Riverkeeper, Inc.'s ("Riverkeeper") Motion for Summary Judgment. (Doc. No. 55). Riverkeeper's motion became ripe for decision on Sunday, April 27, 2025, (see Doc. Nos. 56, 71, 78), and trial is set to begin on May 27, 2025.

The Middle District of Tennessee's local rules seek to avoid situations where, like here, the Court is asked to review and rule on a dispositive motion on a truncated timeline while simultaneously preparing for trial. See L.R.16.01(h) ("Absent court order, no dispositive motion deadline, including response and reply briefs, shall be later than ninety (90) days in advance of the target trial date). Given that this case is set for a jury trial in less than two weeks, the Court has decided to write only for the benefit of the parties without reciting the entire factual background of this case. In doing so, the Court begins with three threshold issues that are easily dispensed with.

First, Defendants argue that the Court should dismiss the claims against Crystal Ray because she has not been in control of the real property at issue in this case ("Site") since her divorce from Ricky Ray in April 2022. (Doc. No. 71 at 4). Riverkeeper does not dispute that

Ricky Ray has been the *sole* owner and operator of the Site since before this case was filed. (Doc. No. 79 ¶ 1). Thus, to the extent Crystal Ray may have violated the Clean Water Act or Resource Conservation and Recovery Act ("RCRA"), those violations would have been "wholly" in the "past." See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 64 (1987). "In the absence of a good faith allegation of continuous or intermittent violations, the court lacks jurisdiction over claims brought under the [Clean Water Act's] or the RCRA's citizen suit provisions." Tenn. Riverkeeper v. Waste Connections of Tenn., Inc., 2025 WL 726584, at *5 (M.D. Tenn. Mar. 6, 2025). Riverkeeper effectively concedes this point in its reply brief because it "does not object to the dismissal of Crystal Ray." (Doc. No. 78 at 1). Accordingly, the Court will dismiss Crystal Ray as a defendant, and trial will proceed with Ricky Ray ("Ray") as the sole remaining defendant in this action.

Second, Ray argues in his response brief that Riverkeeper lacks organizational standing to bring this lawsuit.[1] (Doc. No. 71). The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citation omitted). An "association," like Riverkeeper, "has standing to bring suit on behalf of its members when": (i) "its members would otherwise have standing to sue on their own right," (ii) "the interests at stake are germane to the organization's purpose," and (iii) "neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000) (citing Lujan v. Defnders of Wildlife, 504 U.S. 555, 560–61 (1992)). Riverkeeper easily satisfies the second and third elements because: (i) the environmental

---

[1] Curiously and erroneously, both parties proposed *jury instructions* regarding the issue of Article III standing. (See Doc. Nos. 86 at 3; 88 at 4–5).

protective relief it seeks in this lawsuit is germane to its stated purpose of "preservation, protection, and defense of the Tennessee and Cumberland Rivers and their tributaries," and (ii) this lawsuit does not require any of Riverkeeper's approximately 3,000 individual members to participate. (Doc. No. 48 ¶ 22). The only remaining issue is whether Riverkeeper's members would have standing to sue in their own right.

To establish Article III standing, a member would need to show she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (citing Lujan, 504 U.S. at 560–61). Starting with injury, Riverkeeper claims that its members have recreated in, used, or otherwise enjoyed the Cumberland River and its tributaries in the past, and they intend to do so in the future. (Doc. No. 48 ¶ 24). However, its members have been harmed because the alleged discharges from the Site have negatively impacted "aquatic life and water quality" in the Cumberland River and its tributaries, and Riverkeeper's members would "recreate more in and around these waters but for [Ray's] illegal discharges of pollution." (Id. ¶¶ 26–30). Riverkeeper also submitted a signed declaration from one of its members, Nicholas Keck, stating that pollution coming from the Site is degrading the "natural beauty" of a creek that runs alongside his property, which causes his property to be less appealing to him, his wife, and his guests. (Doc. No. 70-1); see also Waskul v. Washtenaw Cty. Cmty. Mental Health, 900 F.3d 250, 255 (6th Cir. 2018) (citation omitted) (holding that an organization "must make specific allegations establishing that at least one identified member had suffered or would suffer harm"). For these reasons, the Court finds that Riverkeeper sufficiently alleged that its members suffered a past injury and an immediate continuing threat of future injury, caused by Ray, that can be redressed by declaratory

and injunctive relief along with civil penalties. As a result, the Court concludes that Riverkeeper has organizational standing to bring this case.

Third, and related to the issue of standing, one of Ray's defense theories is that Riverkeeper has only presented allegations of "wholly past" violations. (Doc. No. 71 at 7–9). Of course, Ray has not formally moved for summary judgment on this or any other issue. But even if he had, the Court also agrees with him that the issue of "wholly past" violations is a disputed factual issue that the jury will need to decide at trial. (Id. at 11 (arguing "that there are genuine issues of material fact with regard to these 'wholly past' violations"); see also Adams v. Teck Cominco Alaska, Inc., 414 F. Supp. 2d 925, 943 (D. Alaska 2006) (denying summary judgment because party "raised material questions of fact as to whether the alleged violation [of the Clean Water Act] is wholly past").

Having resolved those threshold issues, the Court now turns to the arguments raised in Riverkeeper's motion for summary judgment. Riverkeeper asserts the following three causes of action in this case: (1) Ray violated the Clean Water Act by operating the Site in a manner that discharges pollutants into navigable waters in violation of the applicable National Pollutant Discharge Elimination System ("NPDES") Permit; (2) Ray violated the RCRA by operating a Construction and Demolition Landfill without first obtaining a solid waste disposal permit; and (3) Ray violated the RCRA by operating the Site as a prohibitive open dump. (See Doc. No. 48 ¶¶ 67–150).

Although the Court has carefully considered the parties' positions and briefing on these issues, it need not spend nearly as many pages resolving Riverkeeper's motion. This is a result of the governing rule itself: the Court shall grant summary judgment only where (1) "the movant shows that there is no genuine dispute as to any material fact," and (2) "the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) requires the Court to "state on the record the reasons for granting or denying the motion," but both "the form and detail of the statement of reasons are left to the court's discretion." See 2010 Adv. Comm. Notes. Consequently, district courts are not required "to write elaborate essays using talismanic phrase," Jackson v. Fed. Exp., 766 F.3d 189, 197 (2d Cir. 2014), particularly when they are denying summary judgment. See United States v. Massachusetts, 781 F. Supp. 2d 1, 19–20 (D. Mass. 2011). What "is required is a record sufficient to allow an informed appellate review," id., and in most cases "a district court's determination that there exists a triable issue of fact cannot be appealed on an interlocutory basis," Gregory v. City of Louisville, 444 F.3d 725, 742 (6th Cir. 2006). The Court also views these arguments through the lens of whether *Riverkeeper* is entitled to summary judgment only, as Ray did not cross-move for summary judgment in his favor.

Regarding Count One, Riverkeeper asserts thirteen separate theories for how Ray violated various provisions of his NPDES permit, and therefore the Clean Water Act. The parties generally agree (with one or two exceptions) about what is stated in the Permit and Ray's Storm Water Pollution Prevention Plan ("SWPPP"). However, they disagree about whether Ray's conduct violated those provisions, and those disagreements are riddled with genuine disputes of material fact. As just one example, Riverkeeper's first theory of liability is that Ray failed to conduct and submit a site assessment in accordance with Section 5.5.3.8 of the Permit. (Doc. No. 48 ¶ 72). The Permit states that a "Site assessment shall be conducted at each outfall draining 10 or more acres." (Doc. Nos. 58-9 at 36; 73 ¶ 31). Ray claims that no site assessment is needed under this provision because, as indicated in the SWPPP, the drainage area for each outfall is *less* than 10 acres. Riverkeeper responds that "logic dictates" that at least one of the two discharge points at the Site must be more than 10 acres because the total site is 38.56 acres large. (Doc. No. 48 ¶ 80).

This is a textbook example of a genuine dispute of material fact that prevents the Court from granting summary judgment at this time. Based on this finding, the Court does not believe it would be an efficient use of time and resources to identify and wade through each potential dispute of fact for each of the other twelve theories of liability. See, e.g., Baird v. BlackRock Inst'l Trust Co., N.A., 2021 WL 105619, at * (N.D. Cal. Jan. 12, 2021) ("The Court has not listed, or even attempted to list, every genuine dispute of material fact precluding the grant of summary judgment, because the existence of even one is enough to require denial of the motion."). Suffice it to say, it will be up to the jury to determine whether, and to what extent, Ray violated the NPDES permit.

Counts Two and Three assert potentially inconsisten theories for how Ray allegedly violated the RCRA. Count Two alleges that the Site constitutes a "Construction and Demolition Landfill," and therefore Ray violated the RCRA because he did not obtain a proper landfill permit. Count Three goes a step further and alleges that the Site constitutes an "open dump," which the Act prohibits outright. Whether the Site constitutes a landfill or open dump[2] is a *factual* issue that depends on, among other things, what materials are being managed, stored, or disposed of at the Site. See Assoc. Concerned Over Resources and Nature, Inc. v. Tenn. Aluminum Processors, Inc., 2011 WL 1357690, at *19 (M.D. Tenn. Apr. 11, 2011) (finding "that an issue of fact remains as to whether the Defendant's 'maintaining an 'open dump'' at its facility constitutes open dumping"). Again, the Court need not resolve these disputed factual issues at the summary judgment stage. (See, e.g., Doc. No. 73 ¶ 8).

That brings the Court to the most heavily disputed legal issue in this case: assuming the Site qualifies as a Construction and Demolition Landfill for purposes of Count Two, is Ray exempt from obtaining a landfill permit? The Tennessee Department of Environment and Conservation

[2] Under the RCRA, an "open dump" cannot be a "sanitary landfill." 42 U.S.C. § 6903(14).

("TDEC"), Division of Solid Waste Management issued a regulation titled "Permitting of Solid Waste Storage, processing, and Disposal Facilities." Tenn. Comp. R. & Regs. 0400-11-01-.02. That regulation provides, in relevant part, that "[t]he use of solely natural rock, dirt, stumps, pavement, concrete and rebar, and/or brick rubble as fill material" is "not subject to the requirement to have a permit." Id. 0400-11-01-.02(1)(b)(3)(xiii). Ray contends that the Site's activities fall precisely within this exception, meaning his failure to obtain a permit did not violate the RCRA. (Doc. No. 71 at 9). Riverkeeper argues that Ray's interpretation of TDEC's regulation is "absurd," and that subpart (xiii) does not exempt Ray from obtaining a landfill permit. (Doc. No. 78 at 4–9). In the interest of judicial economy and efficiency, the Court is inclined to wait to see how the related factual issues are resolved before rendering an advisory opinion on a statutory interpretation question that appears to be a matter of first impression.

For the foregoing reasons, (1) Riverkeeper's Motion for Summary Judgment (Doc. No. 55) is **DENIED WITHOUT PREJUDICE**; (2) Crystal Ray is **DISMISSED** as a defendant in this action; and (3) the issue of standing is resolved in Riverkeeper's favor. As a final note, in preparing for the jury trial currently set for May 27, 2025, the parties may want to reconsider their respective positions on settlement because the summary judgment record suggests to the Court that either party could be successful at trial.

IT IS SO ORDERED.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE