IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.** | ) | |
| | ) | |
| **v.** | ) | **No. 3:23-00878** |
| | ) | **Crenshaw/Newbern** |
| **RICKY RAY, et al.** | ) | |
| | ) | |

# TENNESSEE RIVERKEEPER'S TRIAL BRIEF

## I. Theories of Plaintiff for Relief and Anticipated Proof:

### A. Riverkeeper contends Mr. Ray is operating a landfill without first obtaining a solid waste disposal permit.

Mr. Ray has been in operation since at least November 2, 2020, which is the earliest date of site inspections he has submitted. He incurs a violation for each day of operation without the required permit.

Mr. Jeremy Mattingly recorded two videos of Mr. Ray's site which dramatically demonstrate the extent of the waste disposed of there.

Mr. Barry Sulkin was allowed to inspect the site and photograph the debris.

Mr. Frank Canale lives next door to the site and is expected to testify to his observations.

Mr. Nichola Keck owns land at the confluence of one of the receiving streams and Sulphur Creek and is expected to testify to his observations.

### B. Riverkeeper also contends Mr. Ray is violating the Clean Water Act by discharging contaminated stormwater in violation of his General Construction Stormwater Permit.

These violations include,

1. Failure to conduct and submit a site assessment (Count 1.A),

Mr. Barry Sulkin is expected to testify about his investigation of TDEC documents requiring a site assessment and his inability to locate a site assessment in the public files.

2. Discharging stormwater which contains total suspended solids, turbidity, or color in such amounts or character that results in an objectionable appearance compared to the turbidity or color of the receiving water, considering the nature and location of the water, (Count 1.K.),

Mr. Barry Sulkin is expected to testify about the permit requirement. He will present photographs of the contaminated water.

Mr. Nicholas Keck is expected to present photographs of the contaminated water.

Mr. Frank Canale is expected to present two short videos of the contaminated water runoff.

3. Discharging stormwater that causes a violation of a state water quality standard. The standard for Sulphur Creek and its tributaries includes the use "Recreation", which requires that there shall be no total suspended solids, turbidity, or color in such amounts or character that will result in any objectionable appearance to the water, considering the nature and location of the water. (Count 1.L),

Mr. Barry Sulkin is expected to testify about the permit requirement. He will present photographs of the contaminated water.

Mr. Nicholas Keck is expected to present photographs of the contaminated water.

Mr. Frank Canale is expected to present two short videos of the contaminated water runoff.

4. Failure to comply with the duty to perform twice weekly inspections to ensure proper installation, maintenance, and overall effectiveness of erosion prevention and sediment controls (ESPC), and failure to, based on the results of the inspection, revise as appropriate the site description identified in the Stormwater Pollution Prevention Plan (SWPPP) and pollution prevention measures identified in the SWPPP.

Mr. Barry Sulkin is expected to testify about the permit requirements and the documents.

## II. The Meaning of TN Rule 0400-11-01-.02(1)(b)(3) (xiii).

Mr. Ray claims the site is exempt from the requirement to obtain a landfill permit due to an exception to the general rule. For the reasons stated below, this rule was not intended to exempt a landfill from the requirements of permitting and the environmental and public health safeguards provided by the landfill permitting regulations.

TN Rule 0400-11-01-.02(1)(b) reads, in part, as follows:

3. The following facilities or practices are not subject to the requirement to have a permit:

(xiii) The use of solely natural rock, dirt, stumps, pavement, concrete and rebar, and/or brick rubble as fill material.

### A. Unpermitted dumping activities like those at issue here should not be considered "use of…as fill material."

Rule subpart (xiii) is ambiguous insofar as the phrase "fill material" is not defined by the rule nor the statute. Does the rule apply to the disposal of vast amounts of soil and rock in an above

ground landfill, as the defendants contend, or is it intended to apply to filling potholes in a road or filling in low areas to level a lot for building?

The dictionary definition of the term "fill" supports the later interpretation. The word "fill" has been defined as follows: "Fill: To make full; to complete; to satisfy or fulfill; to possess and perform the duties of; to occupy the whole capacity or extent of, so as to leave no space vacant". *Black's Law Dictionary*, Revised Fourth Edition, 1968.

"Fill, a noun: 1: a full supply; esp: a quantity that satisfies or satiates 2: a material used esp. for filling a low place." *The Merriam-Webster Dictionary*, 2019.

These definitions pertain to the filling of a hole or void, such as a pothole or a depression in the ground. They do not apply as readily to the placement of waste on the surface level of the ground in order to create huge mounds of rock and earth, as the Rays have done.

It may be worth reiterating that Defendant is operating a "landfill" under Tennessee and RCRA regulations. "Landfill means a facility, other than a land application unit, where solid wastes are disposed of … by placement on land and covering with soil or other approved material." TN Rule 0400-11-01-.10. *"Landfill* means an area of land or an excavation in which wastes are placed for permanent disposal, and that is not a land application unit, surface impoundment, injection well, or waste pile." 40 CFR 257.2 "Landfill."

**B. <u>The Rule Read in its Entirety Supports Plaintiff's Interpretation by Distinguishing Between the "use of" and "disposal of" Material.</u>**

"'In determining the meaning of [a] statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.'" *United States v. Honaker*, 5 F.3d 160, 161 (6th Cir.1993) (alteration in original) (quoting *Crandon v. U.S.*, 494 U.S.

152, 158 (1990), cert. denied, ---U.S.---,114 S.Ct. 1226, 127 L.Ed.2d 571 (1994)). See also, *Tug Allie-B, Inc. v. U.S.*, 273 F.3d 936, 945 (11th Cir. 2001)).

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Hughes v. McCarthy*, 734 F.3d 473 (6th Cir. 2013), (quoting, *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Essentially, if there is an issue with statutory language, courts "must consider 'the language and design of the statute as a whole' to determine 'the plain meaning of the statute.'" *Schroyer v. Frankel,* 197 F.3d 1170 (6th Cir. 1999), (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)).

"In interpreting the language of a statute ... we do not look at one word or one provision in isolation, but rather look to the statutory scheme for clarification and contextual reference." *U.S. v. McLemore*, 28 F.3d 1160, 1162 (11th Cir. 1994).

The regulation on which Defendant relies to excuse its unpermitted dumping makes a distinction between the "use of" and the "disposal of." *See* TN Rule 0400-11-01-.02(1)(b). The rule uses the word "disposal" when referring to placing of waste in a landfill. Such as,

> "(iv) Disposal of farming wases at facilities…,
>
> (v) Disposal of landscaping and land clearing wastes at facilities…,
>
> (vi) Disposal of construction/demolition wastes at facilities which are on-site of generation…,
>
> (viii) Processing or disposal of solid wastes at hazardous waste management facilities."

Subpart (xiii) does not use the word "disposal". It uses the word "use." The word "use" best pertains to the practice of filling holes and depressions with this type of debris, not disposal in a landfill facility.

Other exemptions provided in TN Rule 0400-11-01-.02(1)(b) corroborate an interpretation that "use of…as fill material" is a distinct activity from the "disposal of" material. For instance, Tennessee regulations provide an exemption from the landfill permit requirement for seven specific categories of materials, including "domestic sewage," "irrigation return flows," and "farming wastes." TN Rule 0400-11-01-.02(1)(b)(3) (xi). But notably, the language of Subpart xiii is not included among these specific carveouts, namely the disposal of "solely natural rock, dirt, stumps, pavement, concrete and rebar, and/or brick rubble as fill material." *Id.* 0400-11-01-.02(1)(b)(3)(xiii).If the disposal, as opposed to the "use…as fill material," of "solely natural rock" *et cetera* were meant to be exempted from permit requirements, they would be included in Rule Subpart xi. They were not because this was not the intent of the rule.

## C. <u>The Need to Preserve the Protections of the General Rule</u>

Statutory exceptions should be read narrowly "to preserve the primary operation of the general rule." *Comm'r v. Clark*, 489 U.S. 726, 739, 109 S.Ct. 1455, 1463, 103 L.Ed.2d 753 (1989)). Cited by *M.L. Johnson Family Properties v. Bernhardt*, 924 F.3d 842 (6th Cir. 2019). The purpose of the general rule "is to establish the procedures, documentation, and other requirements which must be met in order for a person to be permitted to operate a solid waste storage, processing or disposal facility in Tennessee." TN Rule 0400.11.01.02 (1)(a).

The permitting process contains numerous safeguards which would be bypassed if Subpart xiii is applied to exempt certain landfills from permitting. An owner or operator permitted under

the paragraph must comply with all requirements applicable to the facility or activity under the paragraph. Any noncompliance constitutes a violation of the Act. TN Rule 0400.11.01.02 (1)(b)1.

"The requirements of this rule apply as specified to operators of facilities in Tennessee. Except as otherwise provided in this rule, no facility can lawfully store, process, or dispose of solid waste unless the operator has a permit." TN Rule 0400.11.01.02 (2)(d).

The prospective permittee must submit a permit application with specified information. Once the application is complete public notice is required. A public comment period is scheduled whereby any interested person may submit written comments on the draft permit and may request a public hearing if one has not been scheduled.

A landfill operator seeking a permit must also obtain local approval as required by the Jackson Law. T.C.A. § 68-211-701.

It is an unjust result to interpret the rule so as to allow a landfill operator to escape the permitting and local approval process because its landfill disposes of "natural rock, dirt, stumps, pavement, concrete and rebar, and/or brick rubble…" Subpart xiii, instead of "bricks, concrete and other masonry materials, soil, rock and lumber, road spoils, rebar, paving material", and other wastes "resulting from construction, remodeling, repair and demolition of structures and from road building." TN Rule 0400-11-01-.01. While the materials listed in Subpart xiii may be relatively benign in small amounts, they can be harmful when disposed of improperly, such as when piled in huge piles with inadequate protections and environmental safeguards. Certainly, a huge pile of such waste, as on Mr. Ray's site, can be harmful to the environment, offensive to the public, and needful of public notice and the right to comment and request a hearing before the landfill is allowed to operate.

### D. <u>The Beneficial Use Movement</u>

While the legislative history of Subpart xiii has proven elusive, it appears to be part of an initiative in many states to find beneficial uses of landfill materials which are relatively benign when in small quantities. The purposes of finding beneficial uses of fill-like material varies. The cost of disposal can be quite high, landfill capacity is finite and may be maxed out soon in some states, and from an environmental perspective, substituting a suitable fill-like material for virgin material saves natural resources, including energy and water. *Beneficial use of Fill-Like Materials Survey Report*, *February 2021*, Association of State and Territorial Solid Waste Management Officials. https://astswmo.org/files/Resources/Materials_Management/2021-02-Beneficial-Use-of-Fill-Like-Materials-Survey-Report.pdf

States, of course, have different methods of approach. The Mississippi Department of Environmental Quality ("MDEQ") has a "beneficial fill" provision. They define the term as follows: "Beneficial fill refers to the use of certain inert waste materials to level or bring an area to grade for beneficial purposes." *Miss. Admin. Pro. Act Rules*, 11-4-1.1.B.(6). Such a fill activity is generally not regulated by MDEQ as a solid waste landfill, however, certain conditions must be met. The fill material may only be comprised of concrete, brick, mortar, and other similar materials. The fill activity may only be conducted to bring an existing low area to grade for beneficial purposes. The beneficial purposes of the fill activity could include landscaping, erosion control and repair, land stabilization, construction base preparations, or other similar land improvements. The fill area using the inert waste materials must be less than one (1) acre in size. The fill activity must not be conducted for monetary compensation under any circumstances. The fill activity must not occur for more than 120 days. And, upon completion, the fill area must be closed and the fill material covered with 2 feet of earthen material. *Miss. Admin. Pro. Act Rules*, 11-4-1.1.B.(6).

North Carolina also has a "Beneficial Fill" provision. They define the term as "a fill activity to level or bring an area to grade for the beneficial purpose of stabilizing the land or improving the land use potential using only inert debris waste." 15A NCAC 13B .0562. Among the requirements is that "in the absence of local ordinances pertaining to beneficial fill, the activity shall be limited in duration to one year from the initial placement of material and no larger than one acre in size," and "the beneficial fill shall be covered with a minimum of one foot of compacted soil and graded at a slope ratio that shall not exceed three horizontal to one vertical." 15A NCAC 13B .0562.

While the restrictive approaches of Mississippi and North Carolina are certainly not binding on an interpretation of the Tennessee rule, they illustrate that the use of such material, which may be relatively benign in small quantities, is not considered to be a practice which should not be regulated and limited. They both have in common a limit on the size of the area and the duration of the practice. While Tennessee has not enacted a clearly stated law, a reasonable interpretation of the rule is not one that ignores the distinction between the use of fill material and the unlimited, for-profit disposal of fill material. Rather, the rule allows a person to use certain materials to fill potholes or low areas in the land without the need to obtain a landfill permit. But there must be a limit. The rule cannot be interpreted as allowing a person to operate a large, above ground, landfill for a hefty profit, while avoiding the protections afforded for human health and the environment provided by the existing solid waste landfill regulations.

For these reasons, Riverkeeper contends that Subpart (xiii) does not exempt the Rays from the obligation to obtain a solid waste landfill permit and that they are liable, as stated in the Amended Complaint, for failure to obtain a permit.

Respectfully submitted,

For Plaintiff,

/s/ Mark E. Martin
Mark E. Martin
P.O. Box 1486
Oneonta, Alabama 35121
(205) 516-9350
mmartin@markemartin.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing, and all exhibits thereto, if any, has been served on the below-listed person(s), via the Court's CM/ECF electronic filing system, on the 21st day of May, 2025.

Mark E. Martin
P.O. Box 1486
Oneonta, AL 35121
Telephone: (205) 516-9350
mmartin@markemartin.com

Andrea Taylor McKellar (BPR #19618)
McKellar Law Group, PLLC
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9828
Facsimile: 615.866.1278
andie@.mckellarlawgroup.com

Gregory L. Cashion
Smith Cashion & Orr, PLC
3100 West End Avenue
One American Center, Suite 800
Nashville, Tennessee 37203
(615) 742-8553
(615) 742-8556 Facsimile

gcashion@smithcashion.com

William L. Fitts
Smith Cashion & Orr, PLC
3100 West End Avenue
One American Center, Suite 800
Nashville, Tennessee 37203
(615) 742-8553
(615) 742-8556 Facsimile
wfitts@smithcashion.com

*/s/ Mark E. Martin*