**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.** | ) | |
| | ) | |
| **v.** | ) | **No. 3:23-00878** |
| | ) | **Crenshaw/Newbern** |
| **RICKY RAY, et al.** | ) | |
| | ) | |

---

**PLAINTIFF'S BRIEF ON COUNT 2**

---

Plaintiff, Tennessee Riverkeeper, Inc., responds to the Court's request for its theory as to Count 2, as follows:

Riverkeeper contends that Mr. Ray is operating a landfill under Tennessee law that constitutes an "open dump" in violation of RCRA § 4005, 41 U.S.C. § 6945(a). "Open dumping" is actionable under RCRA. 41 U.S.C. § 6945(a). "Dirt Mountain" is an actionable "open dump" (I) because it is a landfill operating without the proper permit, RCRA § 4005(a), 41 U.S.C. § 6945(a); and (II) *additionally* because it is a landfill that is discharging in violation of CWA which constitutes "open dumping" under RCRA regulations. *See id.;* 40 C.F.R § 257.

I. **Mr. Ray is operating a landfill under Tennessee law without permission and is therefore operating an "open dump" under RCRA**.

RCRA provides that "[a]ny solid waste disposal management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited." RCRA § 4005(a), 41 U.S.C. § 6945(a). This section authorizes citizen suits as a mechanism to enforce prohibited "open dumping." *Id.*

Mr. Ray operates a facility that receives and, Riverkeeper contends, "disposes of" solid waste. This facility would therefore qualify as a landfill under Tennessee and Federal regulations.



Case 3:23-cv-00878 Document 113 Filed 05/26/25 Page 1 of 8 PageID #: 1491

*See* 40 C.F.R. § 257.2; Tenn. Comp. R. & Regs. 0400-11-01-.01(2).[1] But Mr. Ray contends that the facility is not a landfill but a construction site. If the jury finds that "Dirt Mountain" / "RR Farms" is not in fact what Mr. Ray says it is but rather is primarily a place where solid wastes are disposed of, then Mr. Ray has been operating a landfill without a permit. Thus, because he does not have the proper permit, Mr. Ray's unauthorized operation of a landfill constitutes actionable "open dumping." *See* 41 U.S.C. §§ 6903(14), 6945(a).

## II. If "Dirt Mountain" is a landfill, it constitutes an "open dump" because it violates the criteria established in 40 C.F.R.

Furthermore, Mr. Ray's facility also qualifies as an "open dump" under the additional and alternative criteria promulgated in the RCRA regulations. There, an "open dump" is defined as a facility for the disposal of solid waste that is not in compliance with the provisions of 40 C.F.R § 257. These provisions provide the minimum standards for the State permitting regimes to distinguish permissible landfills from illegal "open dumps." *See* 41 U.S.C. § 6944(a). Thus, these provisions prohibit enumerated activities that "pose a reasonable probability of adverse effects on health or the environment." *See* 41 U.S.C. § 6944(a).

One of the prohibitions of Section 257 is that "a facility shall not cause a discharge of pollutants into waters of the United States that is in violation of the requirements of the National Pollutant Discharge Elimination System (NPDES) under Section 402 of the Clean Water Act, as amended." Thus, any solid waste disposal facility (i.e., landfill) that causes a discharge without

---

[1] "*Landfill* means an area of land or an excavation in which wastes are placed for permanent disposal, and that is not a land application unit, surface impoundment, injection well, or waste pile." 40 C.F.R. § 257.2. It's worth noting that "land application" units are definitionally agricultural. *Id.*

"'Landfill' means a facility, other than a land application unit, where solid wastes are disposed of by burial in excavated pits or trenches or by placement on land and covering with soil or other approved material." Tenn. Comp. R. & Regs. 0400-11-01-.01(2)

authorization or exemption from NPDES permitting thus violates the Clean Water Act and therefore is an "open dump" under Section 257.

As an initial matter, Mr. Ray's operation is not in compliance with several requirements of its state stormwater permit, the General Stormwater Construction ("GSC") Permit. As Riverkeeper alleges in its Clean Water Act claim (Count I), Mr. Ray has failed to comply with multiple provisions of his GSC permit, including (1) the failure to inspect and perform site assessments, (2) the failure to maintain adequate erosion controls, (3) the failure to ensure discharges do not degrade state water quality, (4) the failure to perform twice-weekly inspections, and (5) the failure to update his Stormwater Prevention Plan. For each of these violations, Mr. Ray is independently liable under the CWA for discharging stormwater in violation of his permit. And because this fails a criterion set out in Section 257, the facility is therefore an "open dump" and liable under RCRA.

But more importantly, the GSC Permit is not even the correct permit. Mr. Ray's solid waste disposal practices require a Tennessee Storm Water Multi Sector General Permit for Industrial Activities, Permit No. TNR050000 ("Tennessee Multi Sector Permit"). The permit contains specific requirements for various industrial activities, and includes provisions for stormwater discharges associated with industrial activity from landfills under Sector L. This permit contains effluent limitations including limits on Total Suspended Solids, and the requirement to monitor the discharge annually and report the results to TDEC on a discharge monitoring report. Sector L also contains other requirements specific to a landfill.

So if the jury finds that "Dirt Mountain" is legally a landfill, then Mr. Ray's facility has caused (and continues to cause) discharges without authorization or exemption in violation of NPDES, thus in violation of the CWA, and is therefore an "open dump" under Section 57 in violation of RCRA § 4005(a), 41 U.S.C. § 6945(a).

In sum, Mr. Ray is in violation of the requirements of NPDES, and therefore CWA, and therefore RCRA, by operating a landfill which causes stormwater discharge into waters of the United States in violation of the requirements of his present permit and moreover without the proper permit.

## III. "Dirt Mountain" is indistinguishable from a landfill engaged in "open dumping."

And to be sure, Mr. Ray is operating a landfill. *See* Tenn. Comp. R. & Regs. 0400-11-01-.01(2) ("'Landfill' means a facility...where solid wastes are disposed of by burial in excavated pits or trenches or by placement on land and covering with soil or other approved material.") That he deems it a construction site does not alter the fact that, but for his purported intent, "Dirt Mountain" is indistinguishable from a textbook landfill. It is a gigantic heap of solid waste someone was paid to receive. Violators should not be allowed to evade environmental regulation and permitting requirements by transparent schemes to game permitting requirements.

Moreover, it is indistinguishable from a landfill in its environmental consequences, as well. The degradation to state and national waters that RCRA, CWA, and the Tennessee Solid Waste Regulations were enacted to protect are happening anyway. These externalities, otherwise unlawful, should not be allowed to continue without the statutorily required permitting and appropriate regulations. And the past violations should not be allowed to go unaccounted before just because Mr. Ray can receive, profit from, and dispose of construction and demolition waste but claim he's only "using it…as fill material." Tenn. Comp. R. & Regs. 0400-11-.01-.02(1)(b)(xiii).

Count 2 therefore alleges that Mr. Ray is in violation of RCRA § 4005(a), 41 U.S.C. § 6945(a), because he is operating a solid waste disposal facility which qualifies as a prohibited open dump. Mr. Ray's facility qualifies as an open dump because his facility discharges pollutants

without permission in violation of the Clean Water Act. The Clean Water Act requires operators of landfills to obtain a NPDES industrial multi-sector general permit. Ray is therefore required to obtain a proper NPDES permit to operate a solid waste disposal facility. Any discharge of pollutants without a NPDES permit is a violation of the Clean Water Act. And any discharges from a solid waste disposal facility that qualify as Clean Water Act violations are also RCRA violations.

## IV. Mr. Ray has no exception to the landfill permit requirement under Tennessee law.

To legally operate a landfill, Mr. Ray needs a Tennessee Mult Sector Permit. The Tennessee Multi Sector Permit is a NPDES permit for operators of facilities associated with industrial activity, such as landfills, that cause point source stormwater discharges into waters of the state of Tennessee. These operators are authorized under this permit to discharge stormwater runoff associated with industrial activity in accordance with the permit's requirements, including stormwater pollution prevention plan requirements, effluent limitations, monitoring and reporting requirements and other requirements from the subject facility to waters of the state of Tennessee.

But rather than acquiring a Tennessee Multi Sector Permit for stormwater discharges from a landfill, Mr. Ray acquired and operates under a General Construction Stormwater Permit, which is the general permit for discharge of stormwater associated with *construction* activities. This permit is much less restrictive and thus not reasonably calculated to protect the environment from the kind of activities Mr. Ray conducts at his facility.

For instance, the General Construction Stormwater Permit has no monitoring requirements and no measurable effluent limits. Moreover, a landfill required to obtain a Tennessee Multi-Sector Permit is also required to register with the state for a Tennessee Solid Waste Disposal Permit, TN Rules 0400-11-01, and *vice versa*, a landfill required to register for a Solid Waste Disposal Permit would be required to have either an individual NPDES permit or the general permit TNR050000.

By disguising his for-profit disposal activities as "construction," Mr. Ray has thus evaded multiple environmental safeguards and protections afforded by Tennessee and Federal law. His only argument is that his "disposal" is exempted from permitting requirements because Tennessee regulations permit the "the use of [similar substances]…as fill material." Tenn. Comp. R. & Regs. 0400-11-.01-.02(1)(b)(xiii). Yet there must be a meaningful distinction between the "use of…as fill material" and the "disposal of" fill material such that an operator of a facility who receives and stores such waste on site is required to obtain a landfill permit. Riverkeeper contends that whatever that precise distinction may be is irrelevant because "Dirt Mountain" has *vastly* exceeded it.

If the exception found in TN Rule 0400-11-.01-.02(1)(b)(xiii) applies to Mr. Ray's disposal activities, then facilities that receive solid waste for profit from construction sites and dispose of that waste by "constructing" mountains out of that waste would be able to avoid landfill permitting requirements. Such landfills would no longer be required to have either the Solid Waste Disposal Permit or the Tennessee Storm Water Multi Sector General Permit for Industrial Activities, Permit No. TNR050000. The environmental protections afforded by these permits and the statutes that require them would be defeated by a transparent attempt to stretch the legal definition of a 'landfill' and 'fill material.'

**CONCLUSION**

Mr. Ray operates a landfill. By attempting to evade the appropriate permitting requirements, he has incidentally incurred numerous violations of RCRA and the CWA.

Also Mr. Ray has apparently understood these allegations, as he has defended Count 2 appropriately, by arguing that his facility is a construction site and rightfully has the General Construction Stormwater Permit and not a landfill required to have a Tennessee Multi Sector Permit. Mr. Ray must insist that his facility is not technically held out as a landfill, because then

his activities are not technically prohibited "open dumping" under RCRA. Riverkeeper contends that Mr. Ray's attempts to muddy the plain and common sense requirements of RCRA § 4005, 40 C.F.R § 257, and TN Rule 0400-11-.01-.02(1)(b)(xiii) will not be availing. The jury, relying on both the legal definitions and common sense, will recognize that "Dirt Mountain" is no construction site but a landfill and that its use of fill material is nothing more than a long shot to evade liability for engaging in profitable, black market, open dumping.

Plaintiff suggests that the question of fact for the jury is therefore whether the defendant's facility is a landfill under the Tennessee Solid Waste Disposal provisions, TN Rules 0400-11-01-.02.

Respectfully submitted,

/s/ Mark E. Martin
Mark E. Martin
P.O. Box 1486
Oneonta, Alabama 35121
(205) 516-9350
mmartin@markemartin.com

/s/ Andrew Holt
Andrew Holt (No. 042543)
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 100
Nashville, Tennessee 37203
Telephone: 615-244-1713
dholt@nealharwell.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing, and all exhibits thereto, if any, has been served on the below-listed person(s), via the Court's CM/ECF electronic filing system, on the 25th day of May, 2025.

Mark E. Martin
P.O. Box 1486
Oneonta, AL 35121
Telephone: (205) 516-9350
mmartin@markemartin.com

Andrea Taylor McKellar (BPR #19618)
McKellar Law Group, PLLC
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9828
Facsimile: 615.866.1278
andie@.mckellarlawgroup.com

Andrew Holt (No. 042543)
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 100
Nashville, Tennessee 37203
Telephone: 615-244-1713
dholt@nealharwell.com

Gregory L. Cashion
William L. Fitts
Smith Cashion & Orr, PLC
3100 West End Avenue
One American Center, Suite 800
Nashville, Tennessee 37203
(615) 742-8553
(615) 742-8556 Facsimile
gcashion@smithcashion.com

*/s/ Mark E. Martin*