IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.** | ) | |
| | ) | |
| **v.** | ) | **No. 3:23-00878** |
| | ) | **Crenshaw/Newbern** |
| **RICKY RAY, et al.** | ) | |
| | ) | |

**PLAINTIFF'S BRIEFING ON PROOF OF POLLUTANTS**

Plaintiff Tennessee Riverkeeper ("Riverkeeper") respectfully submits this brief to address whether Plaintiff has established violations of the Clean Water Act based on (1) discharges of pollutants and (2) noncompliance with the terms of an NPDES permit.

## INTRODUCTION

### I. Plaintiffs have proven that Mr. Ray is allowing "pollutants" to be discharged from his property into Sulphur Creek.

The CWA forbids the discharge of "any pollutant" into navigable waters unless the discharge is allowed by permit. 33 U.S.C. § 1311(a). Congress defined "discharge" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12) (1982).

#### A. Muddy water is a pollutant under the CWA by definition, by precedent, and by every court (we found) that considered the issue.

The Clean Water Act (CWA) defines the term "pollutant" as "dredged spoil, ***solid waste***, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, ***rock***, ***sand***, cellar dirt and **industrial**, municipal, and agricultural **waste** discharged into water." CWA § 502, 33 U.S.C. § 1362 (emphasis added).

Sediment including muddy water is a pollutant under the Clean Water Act. *See Driscoll v. Adams,* 181 F.3d 1285, 1291 (11th Cir.1999) (runoff containing sand and silt held to be

"pollutants"); *Draper v. H. Roberts Fam., LLC*, 2009 WL 10668404, at *16 (N.D. Ga. Mar. 30, 2009) ("Sediment-laden storm water is a pollutant."); *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523 (11th Cir. 1996) ("when rain water flows from a site where land disturbing activities have been conducted, *such as grading and clearing*, it falls within this description [of "pollutant.]"); *Pronsolino v. Marcus,* 91 F.Supp.2d 1337, 1351 (N. D. Cal.2000); *Hudson River Fishermen's Ass'n v. Arcuri,* 862 F.Supp. 73, 76 (S.D.N.Y. 1994); *North Carolina Shellfish Growers Ass'n v. Holly Ridge Associates, LLC*, 278 F.Supp.2d 654, 676 (E.D.N.C. 2003); *U.S. v. Pozsgai,* 999 F.2d 719, 725 (3d Cir. 1993) (affirming District Court in holding that the placement of "concrete rubble" and "cinder block" on defendants' property constituted "pollutants" under the Clean Water Act).

Notably, in *Pozsgai*, the Third Circuit rejected defendant's contention that "fill material" such as "concrete rubble" and "cinder block" did not qualify as "pollutants" under the CWA. 999 F.2d at 725. Rather, because the term "pollutant" includes "dredged spoil, rock, [and] sand," which are the constituents of "fill material" used here, the Court ruled that the materials discharged by the Defendants constituted "pollutants." *Id.*

In *Waste Action Project v. Girard Res. & Recycling*, 2024 WL 4366978 (W.D. Wash. Sept. 4, 2024), the Court accepted photos and videos of "flowing muddy water" as sufficient evidence of a pollutant discharge. Plaintiff's expert asserted, and the Court accepted, that the turbidity alone was sufficient to meet this standard. *Id.*

**B. Plaintiffs have shown sufficient evidence from which a reasonable trier of fact could conclude that "any pollutant" is being discharged from Mr. Ray's property.**

Plaintiff has provided extensive evidence, including photos and videos, showing sediment laden-stormwater flowing from Mr. Ray's property into Sulphur Creek. The water is visibly turbid

and discolored. Its character alone—thick, brown, opaque—is proof of pollutant discharge under CWA. *See id*.

This is not natural erosion, and the jury knows it. The discharge originates from imported construction and demolition debris, dumped and graded across the site without sufficient stormwater and erosion controls. But for Mr. Ray's actions—stockpiling waste, failing to implement BMPs, and exposing loose fill to rain—these pollutants would not be present on-site, much less mobilized into Sulphur Creek.

The CWA does not require plaintiffs to identify the precise chemical makeup of the discharge. The statute prohibits the discharge of "*any* pollutant," including rock and sand. 33 U.S.C. § 1311(a). Prior courts have not interpreted the broad definition of "pollutant" overbroadly in determining that sediment is a type of a pollutant. *See Driscoll,* 181 F.3d at 1291. The burden is not to quantify turbidity or to make a list of which pollutants are being "added to" Sulphur Creek, but to demonstrate that a pollutant is being added to navigable waters from a point source.

Plaintiffs have done so. The visual evidence—unrebutted—confirms repeated discharges of visible sediment from a disturbed site. That is sufficient for strict liability. *See Girard Res. & Recycling*, 2024 WL 4366978 (photos and video of muddy runoff sufficient). The purpose of the CWA—to prevent *all* unauthorized discharges into waters of the United States—is accomplished by allowing citizen plaintiffs to prove "addition of pollutants" by photos of clearly unclear water.

Mr. Ray may dispute the characterization of these flows, but no reasonable trier of fact could conclude that the turbulent discharge of visibly muddy water from a landfill site is anything *but* the addition of a pollutant. The jury is not required to determine *which* pollutants are being added, only that "any pollutant" is being added. Because sediment is a pollutant, *see id*., Plaintiff's evidence of photos showing sediment discharged as recently as May 2025 is sufficient.

### C. Expert Testimony or Scientific Testing is Not Required to Sustain an Allegation of "Pollutants" under the Clean Water Act.

Contrary to Defendants' contention, "failure to provide any expert proof regarding a pollutant" and its discharge is ***not*** required to allow a jury to properly conclude that Defendant violated the Clean Water Act. [Trial Tr. 124.5-9, 126.2-12, May 28, 2025.] Defendant's reliance *on Riverkeeper v. Tweden* is therefore misplaced. 2025 WL 725741, at *3 (M.D. Tenn. Mar. 6, 2025)

As Defendant's acknowledged, the Court in *Tweden* held that Riverkeeper could not proceed on visual proof alone based on the "pollutants at issue." *Id.* at *9. [*Id.* at 124.12-17.] The pollutants at issue in *Tweden* were PFAS and PFOAS, miniscule and invisible substances.

Here, the "pollutants" at issue are rock, sand, dirt, construction waste, and other materials that constitute "fill material." The holding of *Tweden* is therefore inapposite. *See id*. ("[A]bsent a claim that Riverkeeper's scientist is able to perceive, with the naked eye, the presence of the pollutants at issue, the court cannot credit the statement that Riverkeeper's scientist observed "pollutant" discharge as anything other than speculative.")

Mr. Ray, Mr. Sulkin, and all the members of the jury are able to perceive sediment laden water with the naked eye and draw the conclusion that pollutants are being added to Sulphur Creek.

Additionally, the allegations of violation in that case were based on discharges of pollutants without *any* NPDES permit whatsoever. *See Tweden,* 2025 WL 725741, Dft.'s Motion to Dismiss, Dkt. 19 at 13. Here, the violation is based on failing to comply with specific controls that resulted from and occurred simultaneously with the discharge of pollutants into Sulphur's Creek. Thus, contra to Defendant's contention, the "exact same standard" does not apply here as it did in *Tweden*. [*Id*. at 125.7-14.]

Nor did the Court "basically note[] that they needed testing afterwards to satisfy the exact same standard" or "that the permit stated that discharge must not contain total suspended solids,

turbidity, or color in such amounts or character that will result in any objectionable appearance compared to the turbidity or color of the receive water." [Id. at 125.7-9.]

Here, Mr. Ray has a NPDES permit that sets standards for the discharge of stormwater. These standards were not at issue in the *Tweden* case. Even if the *Tweden* Court had ruled that scientific testing was required to sustain plaintiff's claim there, it would still not be applicable here because (1) PFAS and other invisible pollutants are not part of Riverkeeper's claim and (2) Riverkeeper is suing for discharges that occurred while Mr. Ray was in violation of his specific General Construction permit.

## II. Discharges that Occur in Violation of a NPDES Permit are Violations of the CWA.

The Clean Water Act imposes a duty on an NPDES holder to comply with the terms of its permit. 40 C.F.R. § 122.41(a) ("The permittee must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action.")

"Noncompliance with a [NPDES] permit constitutes a violation of the Act, such that citizen-suit provisions are triggered." *American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 539 (6th Cir. 2004). (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 174, (2000)). Numerous courts agree. *See Sierra Club v. Simkins Industries*, 847 F.2d 1109, 1116 (4th Cir.1988) (rejecting that the phrase "an effluent standard or limitation" of § 1365(a) should be construed to exclude citizen suits that do not allege discharge of pollutants in violation of permit limitations). *Draper*, 2009 WL 10668404, at *17 ("Any permit noncompliance constitutes a violation of the Clean Water Act."); *Northwest Envl. Advocates v. City of Portland*, 56 F.3d 979, 986 (9th Cir. 1995) ("The plain language of CWA § 505 authorizes citizens to enforce *all* permit conditions") (emphasis in original); *Gill v. LDI*, 19 F. Supp. 2d 1188,

1195 (W.D. Wash. 1998) ("Violation of any condition in an NPDES permit is considered a violation of the CWA.").

**A. Procedural Violations are Actionable Under the CWA's Citizen Suit Violation**

The Clean Water Act's citizen suit provision authorizes enforcement of *all* "effluent standard[s] or limitation[s]" which explicit include any condition of an NPDES permit. 33 U.S.C. § 1365(f)(6).

This includes the failure to submit discharge monitoring reports, the failure to maintain or update Stormwater Pollution Prevention Plans (SWPPs), and failure to implement required BMPs. *See Menzel v. County Utilities Corporation,* 712 F.2d 91, 94 (4th Cir. 1983) ("Fail[ure] to file [discharge monitoring reports], or fail[ure] to file accurate reports, would be in violation of its NPDES and would be subject to citizen suit"); *Simkins* , 847 F.2d at 1116 (reporting requirements are "expressly made condition[s]" of the permit and enforceable via § 1365); *see also Hodgins v. Carlisle Engineered Products, Inc*., 2005 WL 8167152, at *8 (N.D. Ohio 2005) (procedural violations, even without proven environmental harm, support CWA liability).

The *Hodgins* court emphasized that these procedural provisions are not mere formalities: "Procedural requirements are the key to citizen enforcement because they provide citizens with easy access to compliance data." 2005 WL 8167152, at *8. "Violations of such procedures are particularly problematic because they hinder the capabilities of the EPA and the public at large to monitor and discover substantive violations at all." *Id.*

Moreover, even if courts sometimes treat procedural violations as "less serious," they remain violations. *Id. Hodgins* concluded that failure to obtain a TSD ("transport, storage, and disposal") permit under RCRA, regardless of whether environmental harm was shown, constituted

an ongoing, redressable violation.[1] *Id*. The Court added that "the failure to abide by the procedural schemes of environmental statutes, such as obtaining appropriate permits, has the potential to undermine the entire environmental regulatory system." *Id*.

Defendant therefore "is wrong when [he] asserts that the only violations that count are discharge violations." *Gill*, 19 F.Supp.2d at 1195.

**B. Failure to Maintain or Implement a SWPPP is a Violation**

In *Waste Action Project v. Girard Res. & Recycling*, the Court held that failure to implement a Stormwater Pollution Prevention Plan (SWPPP) upon permit coverage was a violation of both the general permit and the CWA—for each day of noncompliance. 2024 WL 4345258 (W.D. Wash. Sept. 30, 2024). Further, even *technical* errors in a SWPPP—like incorrect site maps or outdated narrative—were deemed independently enforceable CWA violations. *Id.*; *see also Waste Action Project v. Port of Olympia*, 2019 WL 6215281, at *6 (W.D. Wash. 2019).

The *Girard* court emphasized that an admission of SWPPP flaws—even without direct evidence of runoff—was enough to establish liability. *Id*. ("the admitted flaws…are sufficient to establish a violation.")

**C. Sixth Circuit Has Approved Citizen Standing for Purely Procedural Injuries**

In *American Canoe*, the Sixth Circuit reversed a lower court for rejecting standing based on monitoring/reporting failures. It held that an organization's inability to access discharge data due to permit violations constituted an injury in fact. 389 F.3d at 539.

[1] These RCRA holdings are relevant to the Clean Water Act claims because "RCRA has a "strikingly similar" citizen-suit provision to the CWA's." *Riverkeeper v. Tweden*, 2025 WL 725741, at *3 (quoting *Davis v. Sun Oil Co.*, 953 F. Supp. 890, 893 (S.D. Ohio 1996), *aff'd*, 148 F.3d 606 (6th Cir. 1998). RCRA provides that any citizen may commence a civil action against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" the Act. 42 U.S.C. § 6972(a)(1)(A).

### D. *Ragsdale* Misstates the Law

As a final note, *Ragsdale* should not be found persuasive. First, its holding is based on the fact that the plaintiff there was not able to show that stormwater from defendants' property reached "navigable waters." *Ragsdale v. JLM Constr. Servs., Inc.*, 737 F. Supp. 3d 449, 466 (W.D. Tex. 2024). But more importantly, where it states that plaintiffs, to prevail under the CWA, "must show that the alleged violations involved discharges of pollutants into waters of the United States," it mistakenly cites to *Sackett* for this authority. *Id.* at 462; *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 660 (2023).

*Sackett* makes no such holding. *See generally id*. In fact, the Supreme Court noted that "the [CWA] also authorizes private plaintiffs to sue to enforce its requirements" (citing § 1365(a)), that the CWA "imposes what have been described as "crushing" consequences "even for inadvertent violations," and provides "expansive interpretations of the term 'violation.'"

The holdings of *Sackett* should be limited to determining what wetlands qualify as "waters of the United States" and what level of deference to grant to the EPA in answering this question. In no way does it abrogate the broad language of the CWA in allowing citizen suits to enforce *all* "effluent standard[s] or limitation[s]" which explicit include any condition of an NPDES permit. 33 U.S.C. § 1365(f)(6). As Sackett noted, Congress does not "hide elephants in mouseholes." *Id.* at 677 (quotations omitted).

## CONCLUSION

Noncompliance with any condition of an NPDES permit constitutes a violation of the Clean Water Act. This includes both substantive discharge limits and procedural requirements such as monitoring, reporting, and implementation of BMPs.

Plaintiffs have presented sufficient evidence of ongoing violations of these permit conditions, in addition to evidence of discharges of pollutants that were allowed to occur from the

property while Mr. Ray was in violation of his permit. Accordingly, he is liable under the Clean Water Act. Each day that Mr. Ray failed to comply with his permits requirements is a separate, enforceable violation of the Clean Water Act.

Respectfully submitted,

For Riverkeeper:

/s/ Mark E. Martin
Mark E. Martin
P.O. Box 1486
Oneonta, Alabama 35121
(205) 516-9350
mmartin@markemartin.com

Andrew Holt (No. 042543)
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 100
Nashville, Tennessee 37203
Telephone: 615-244-1713
dholt@nealharwell.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing, and all exhibits thereto, if any, has been served on the below-listed person(s), via the Court's CM/ECF electronic filing system, on the 29th day of May, 2025.

Mark E. Martin
P.O. Box 1486
Oneonta, AL 35121
Telephone: (205) 516-9350
mmartin@markemartin.com

Andrea Taylor McKellar (BPR #19618)
McKellar Law Group, PLLC
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9828
Facsimile: 615.866.1278
andie@.mckellarlawgroup.com

Andrew Holt (No. 042543)
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 100
Nashville, Tennessee 37203
Telephone: 615-244-1713
dholt@nealharwell.com

Gregory L. Cashion
William L. Fitts
Smith Cashion & Orr, PLC
3100 West End Avenue
One American Center, Suite 800
Nashville, Tennessee 37203
(615) 742-8553
(615) 742-8556 Facsimile
gcashion@smithcashion.com

*/s/ Mark E. Martin*