# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **TENNESSEE RIVERKEEPER, INC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:23-cv-00878 |
| **RICKY RAY d/b/a RR FARMS aka RR FARMS MASS GRADING,** | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The Court held a jury trial in this case starting on May 27, 2025. After Plaintiff Tennessee Riverkeeper, Inc. ("Tennessee Riverkeeper") rested its case-in-chief on day two of trial, Defendant Ricky Ray made an oral motion under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law. The following morning, Tennessee Riverkeeper filed a Motion to Reopen its Case and to Reconsider the Exclusion of Barry Sulkin as Plaintiff's Expert. (Doc. Nos. 118, 119). As reflected in the trial transcript from May 29, 2025, the Court granted in part Ray's Rule 50(a) motion and dismissed Count One of the Amended Complaint. The Court denied Tennessee Riverkeeper's motion to reopen and reconsider. The Court incorporates by reference its previous bench rulings and it expands on its reasoning below.

## I.     RAY'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

At the end of Tennessee Riverkeeper's case-in-chief, Ray moved under Rule 50(a) for judgment as a matter of law on its claims under the Clean Water Act (Count One) and the Resource

Conservation and Recovery Act ("RCRA") (Count Two).[1] A Rule 50(a) motion is appropriate only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law should be granted when, viewing the evidence and proof in the light most reasonable to the nonmoving party, "'reasonable minds could come to but one conclusion in favor of the moving party.'" Culver v. CCL Label, Inc., 455 F. App'x 625, 627 (6th Cir. 2012) (citations omitted). To permit proper consideration of Ray's motion, the Court requested and received briefs from the parties regarding how these standards applied to the evidence Tennessee Riverkeeper presented in its case-in-chief. (Doc. Nos. 116, 117).

As background, Tennessee Riverkeeper alleged in Count One of the Amended Complaint that Ray violated the Clean Water Act, 33 U.S.C. § 1251, et seq., by operating RR Farms in a manner that discharges pollutants into the waters of the United States and Tennessee in violation of his "NPDES General Permit for Discharges of Stormwater Associated with Construction Activities" (the "Permit").[2] (See Doc. No. 92 (Pretrial Order) at 2). Plaintiff's case-in-chief consisted of five witnesses and some photos and videos of what purported to be muddy water. The witnesses testified about their personal observations of water flowing away from RR Farms prior to and after this case was filed in August 2023. Four of the five witnesses presented photos or videos of RR Farms that included multiple depictions of flowing water. Most, if not all, of the witnesses described the flowing water as "muddy," but no witness offered any testimony on *why*

---

[1] Although Ray initially moved to dismiss Count Two, he did not object when the Court explained that Tennessee Riverkeeper presented enough evidence on Count Two to go to the jury. Therefore, the Court will focus its analysis solely on Count One.

[2] Tennessee Riverkeeper initially alleged fourteen separate theories for how Ray violated his NPDES permit (see Doc. No. 48 ¶¶ 67–129). However, Tennessee Riverkeeper later agreed to proceed to trial on only four of those theories. (See, e.g., Doc. No. 99 at 3–16).

the water was "muddy." Based on this evidence (or lack thereof), Ray argued that he is entitled to judgment as a matter of law on Count One because Tennessee Riverkeeper failed to present any evidence that he "discharged a *pollutant*" into the waters of the United States, which is an essential element for a violation of the Clean Water Act. See United States v. Cundiff, 555 F.3d 200, 213 (6th Cir. 2009) (emphasis added).

It is well established in the Sixth Circuit that a plaintiff may succeed on a claim under the Clean Water Act only if it can prove by a preponderance of the evidence that: "(1) a person (2) *discharged a pollutant* (3) from a point source (4) into waters of the United States (5) without a permit." United States v. Cundiff, 555 F.3d 200, 213 (6th Cir. 2009) (citing 33 U.S.C. §§ 1311(a), 1362(6), 1362(7), 1344(a), 1362(12) (emphases added)); see also Tennessee Riverkeeper, Inc. v. City of Lawrenceburg, 2023 WL 4611816, at *8 (M.D. Tenn. 2023). "The Clean Water Act defines the 'discharge of a pollutant' as 'any addition of any pollutant to navigable waters from any point source.'" Id. (quoting 33 U.S.C. § 1362(12)(A)). As the Sixth Circuit has explained, the Clean Water Act "is not concerned with mere 'material' but instead with the addition of 'pollutants'– material can be benign in one spot and seriously disruptive to the surrounding ecological system in another." Id. Tennessee Riverkeeper recognized these requirements because it explained in the Pretrial Order that "Count One alleges [Ray][3] violated the [Clean Water Act] by operating the Site in a manner that *discharges pollutants* to the waters of the United States and waters of the state in violation of the Permit." (Doc. No. 92 at 2 (emphases added)).

Tennessee Riverkeeper opposed Ray's Rule 50(a) motion and dismissal of Count One, contending it proved Ray "is allowing 'pollutants' to be discharged from his property in Sulfur

---

[3] The Pretrial Order refers to "the Rays" collectively, but Crystal Ray was dismissed as a defendant by agreement before trial.

Creek." (Doc. No. 117 at 1). Tennessee Riverkeeper further argued that "muddy water is a pollutant" as a matter of law "under the [Clean Water Act] by definition, by precedent, and by every court . . . that considered the issue." (Id. at 1–2). The Court disagrees.

Tennessee Riverkeeper's failure to present evidence at trial regarding pollutants renders this case factually distinguishable from the cases cited in its brief, such as Driscoll v Adams, 181 F.3d 1285, 1287 (11th Cir. 1995), in which the plaintiff actually presented evidence of soil erosion consisting of mud, sand and other materials—all of which fall within the Clean Water Act's definition of pollutants. Likewise, as Tennessee Riverkeeper recognizes, Waste Action Project v. Girard Res. & Recycling LLC, 2024 WL 4366978 (W.D. Wash Sept. 4, 2024) is in stark contrast to this case because it involved an expert witness who testified that the high turbidity of the "flowing muddy water" supported an inference of pollutants. Tennessee Riverkeeper's reliance on Hughey v JMS Dev. Corp., 78 F.3d 1523 (11th Cir. 1996) also fails to advance its opposition to Ray's motion because that case involved whether the court should issue a permanent injunction, and the Eleventh Circuit merely noted in dicta that the discharge of storm rainwater was a problem the EPA did not want to address. Id. at 1525 & n.1.

Recognizing that it failed to offer in its case-in-chief any evidence about turbidity or expert witness testimony about the muddy water, Tennessee Riverkeeper next argues (without any legal authority) that no expert or scientific proof is required to "sustain an allegation of 'pollutants' under the Clean Water Act." (Doc. No. 117 at 4). Then, Tennessee Riverkeeper argues (without any factual support) that "the members of the jury are able to perceive sediment laden water with the naked eye and draw the conclusion that pollutants" in the muddy water must be "rock, sand, dirt, construction waste, and other materials that constitute 'fill material.'" (Id.). This argument again fails because not a single witness testified that he saw "sediment" in the muddy water, nor

did any witness testify that sediment in the muddy water is apparent just from looking at the pictures and videos offered into evidence. Instead of supporting its case with admissible evidence, Tennessee Riverkeeper invited the jury to engage in rank speculation about *why* the "muddy" water is muddy, and then hold Ray liable for discharging unknown pollutants into navigable waters of the United States. This complete lack of evidence supports granting Ray's Rule 50(a) motion for judgment as a matter of law.

Last, the remaining cases cited in Tennessee Riverkeeper's brief fail to support its opposition to Ray's motion. Critically, none of those cases stand for the proposition that a plaintiff can succeed on a Clean Water Act claim without *any* proof of pollutants. For example, in Am. Canoe Ass'n Inc. v. City of Louisa Water and Sewer Comm'n, the Sixth Circuit merely held that affidavits about alleged pollutants supported Article III standing. 389 F.3d 536 at 540–43 (6th Cir. 2004). Standing cases, including City of Louisa, are wholly inapposite here because a plaintiff "need not prove to a scientific certainty that [the defendant] has, in fact, discharged pollutants in violation of its permits *in order to obtain standing*"—that is a "merits question[]." Ecological Rights Foundation v. Pacific Lumber Co., 230 F.3d 1141, 1152 (9th Cir. 2000). Also, unlike Tennessee Riverkeeper, the plaintiff in Draper v. H. Roberts Family, LLC opposed summary judgment by "present[ing] evidence that there were illegal discharges" of pollutants based on soil erosion, turbidity, inspection reports, testing of water samples, and visual contrast. 2009 WL 10668404, at *19–*20 (N.D. Ga. 2009). Moreover, the issue presented in Menzel v. Cnty. Utilities Corp. was whether the defendant had a valid NPDES permit, not whether the defendant was discharging pollutants into a creek. 712 F.2d 91 (4th Cir. 1993) (reversing grant of summary judgment and remanding for the district court to consider whether plaintiffs could "prove that [defendant's] *discharges* into Buchanan Creek during the period at issue were in violation of the

5

NPDES permit limitations."). Last, the Court disagrees that the discussion about "procedural violations" in Hodgins v. Carlisle Engineered Products, Inc. is relevant here because Hodgins only discussed the *RCRA*, not the Clean Water Act, and the RCRA does not require a plaintiff to prove a "discharge of pollutants." 2005 WL 8167152, at *8 (N.D. Ohio Jan. 24, 2005).

In sum, the Court concludes that Ray is entitled to judgment as a matter of law on Count One because Tennessee Riverkeeper failed to offer *any* evidence proving a discharge of *pollutants* within the scope of the Clean Water Act.

## II. TENNESSEE RIVERKEEPER'S MOTION TO REOPEN (DOC. NO. 118)

On the final morning of trial, after it rested its case-in-chief, Tennessee Riverkeeper moved to reopen is case for the limited purpose of allowing Barry Sulkin to amend his previously excluded expert report and testify as an expert witness. (Doc. No. 118). Ray opposed.

The Court has "considerable latitude" and "discretion" in deciding whether to allow parties to submit new evidence after they have closed their case-in-chief. United States v. McCoy, 1994 WL 652765, at *5 (6th Cir. Nov. 18, 1994) (citing United States v. Walker, 772 F.2d 1172, 1177 (6th Cir. 1985)). In exercising this discretion, the Court must consider: (1) the timeliness of the motion; (2) the character of the testimony; and (3) the effect of granting the motion. United States v. Blankenship, 775 F.2d 735, 740 (6th Cir. 1985). The most important consideration is whether the opposing party would be prejudiced if the Court permitted the moving party to reopen its case-in-chief. Id.; see also United States v. Adams, 665 F. App'x 312, 321 (6th Cir. 2016). In addition to these considerations, the moving party (i) "should provide a reasonable explanation for failure to present the evidence in its case-in chief," and (ii) the "evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury." Blankenship, 775 F.2d at 741. The Sixth Circuit has also advised trial courts to be "extremely reluctant" to grant a motion to reopen. United States v. Billingsley, 474 F.2d 63, 67 (6th Cir. 1973).

As the Court previously explained, Tennessee Riverkeeper knew Mr. Sulkin would not be able to testify as an expert witness on May 19, 2025, when the Court ruled "he may not offer expert opinion testimony under Federal Rule of Evidence 702."[4] (Doc. No. 96 ¶ 11). It was not timely for Tennessee Riverkeeper to wait until *after* it rested its case-in-chief to ask the Court to reconsider that pretrial ruling. More importantly, Mr. Sulkin's untimely "amended" expert report (Doc. No. 119) expressed wholly new opinions, including that "[t]he presence of muddy water shows that water leaving [RR Farms] and entering the streams is polluted with sediment, dirt, sand, and other contaminants washing from the Ray site." (See Doc. No. 119 at 4). The prejudicial effect of granting Tennessee Riverkeeper's belated motion and allowing Mr. Sulkin to offer this undisclosed "expert" testimony about his observations of muddy water would certainly require a new trial. The Court and parties expended resources preparing for trial based on the theories presented in the Pretrial Order, and given the (i) extreme prejudice to Ray and (ii) Tennessee Riverkeeper's failure to provide a reasonable explanation or good cause for waiting to amend Mr. Sulkin's report, the Court exercised its discretion to deny Tennessee Riverkeeper's motion.

### III. CONCLUSION

For these reasons and those discussed on the record, the Court Rules as follows:

- Ray's oral Rule 50(a) Motion for Judgment as a Matter of Law is **GRANTED IN PART** and **DENIED IN PART**, and Count One of the Amended Complaint (Doc. No. 48 ¶¶ 67–129) is **DISMISSED**.

- Tennessee Riverkeeper's Motion to Reopen Plaintiff's Case and to Reconsider the Exclusion of Barry Sulkin as Plaintiff's Expert (Doc. No. 118) is **DENIED**.

These rulings apply retroactively to May 29, 2025.

---

[4] Lest there were any doubts about the admissibility of Mr. Sulkin's proposed expert testimony, Tennessee Riverkeeper's counsel acknowledged on the last day of trial that Mr. Sulkin's original opinion was full of legal opinions.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE