# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

TENNESSEE RIVERKEEPER, INC.,    )

                      )

      Plaintiff,           )

                      )

v.                        )       **No. 3:23-00878**

                      )       **Crenshaw/Newbern**

RICKY RAY d/b/a RR FARMS aka RR  )

FARMS MASS GRADING,      )

                      )

      Defendant.         )

## <u>PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT</u>

Riverkeeper's motion does not relitigate or invent new theories. The record contains unrefuted evidence of sediment-laden stormwater discharges, admitted permit violations, and a jury finding that Defendant operated a landfill without a permit. These facts trigger liability under the Clean Water Act (the "CWA") and RCRA as a matter of law. To prevent manifest injustice, the Court should alter and/or amend its judgment as a matter of law to either: (1) Grant Riverkeeper judgment as a matter of law, or (2) order a new trial.

**I.      The Clean Water Act Expressly Provides for Civil Penalties for Permit Violations.**

Contrary to Defendant's suggestion, the CWA expressly provides for civil penalties for non-discharge permit violations. Section 1365(a) provides the Court with jurisdiction to enforce any "effluent standard or limitation" and to apply civil penalties under 33 U.S.C. § 1319(d). 33 U.S.C. § 1365(a). The Act defines "effluent standard or limitation" as, *inter alia*, "a permit or condition of a permit issued under Section 1342…" *Id.* §1365(f)(7). Section 1319(d) allows a court to impose civil penalties upon any person who violates "any permit condition or limitation implementing any of [33 U.S.C. §§ 1311, 1312, 1316, 1317, 1318, 1322(p), 1328, or 1345] in a permit issued under [33 U.S.C. §] 1342…by a State…." 33 U.S.C. 1319(d). *See*

1

*American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n,* 2009 WL 8520576 at *10 (E.D.Ky. 2009) ("Because liability under the Clean Water Act is a form of strict liability, the plaintiffs can prevail simply by showing that the City has violated its permit." (citing 33 U.S.C. § 1319(d); *United States v. Winchester Mun. Utils.*, 944 F.2d 301, 304 (6th Cir. 1991))). And § 1318 allows the Administrator to impose recordkeeping, reporting, maintenance, and sampling requirements on point source owners or operators and to require them to "provide such other information" may be required. 33 U.S.C. § 1318(a)(A).

As both parties acknowledge, the permit at issue here is a NPDES permit issued under 33 U.S.C. § 1342. The permit requires periodic site assessments and inspections, (*See* ECF No. 58-9, at §§ 5.5.3.8, 5.5.3.9,) which is an implementation of conditions and limitations contemplated by 33 U.S.C. § 1318. Therefore, under the plain language of §§ 1319(d) and 1365(a), civil penalties are appropriate to enforce even non-discharge permit violations.[1] *See, e.g., Am. Canoe*, 2009 WL 8520576 ("Here, the City does not dispute that it has violated its NPDES permit. Thus, there can be no doubt that the City is liable for civil penalties.")

Defendant's only authority for drawing a distinction between § 1365(f)(1) and § 1365(f)(7) is *Pymatuning Water Shed Citizens for Hygienic Env't v. Eaton*, 506 F. Supp. 902, 908 (W.D. Pa. 1980). But that court never discussed such a distinction, and the plaintiff in that case *only* sought injunctive relief. *See id.* at 903. Moreover, Defendant also misconstrues *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546 (5th Cir. 1996). When the Court stated, "logic dictates that the court must be able to decide whether the discharged substance is a pollutant in order to determine whether the defendant is violating the statute," it was answering the question

---

[1] Defendant includes an argument on standing grounds, but this Court already resolved the issue of standing in Plaintiff's favor on summary judgment. (ECF No. 94 at 4.).

2

of whether a court may decide if a substance is a "pollutant" without EPA's prior determination. *Id*. at 566. Defendant warps this answer to invent a distinction between permit violations and discharge violations that directly contradicts the plain language of the CWA. Rather, *Sierra Club* reinforces that the Court can determine what constitutes a pollutant without regulatory preapproval. *See* 73 F.3d at 566. Defendant's reading would undermine that statutory command and defeat the Act's purpose of ensuring that all permit conditions are enforceable to prevent pollution.

## II. Riverkeeper Presented Undisputed Evidence Establishing "Pollutant" Discharge.

Most critically, Defendant fails to confront Riverkeeper's core argument: that dismissal of its CWA claims despite uncontroverted evidence of pollutant discharge was clear legal error.

The trial record was replete with direct, visual evidence, including multiple photographs and videos, of opaque, muddy stormwater discharging from Mr. Ray's landfill into Sulphur Creek. Moreover, testimony from Mr. Ray's neighbors identified this water as containing "sediment" and that Mr. Ray's discharges deposited accumulated sediment on their property, contrary to the Court's finding that "not a single witness testified that he saw 'sediment' in the muddy water." (ECF 125 at 4.) Most importantly, these neighbors testified that *only after* Mr. Ray began his operation did muddy water began flooding their properties and deteriorating Sulphur Creek.

This evidence of pollutant discharge was not disputed at trial. The Court should not reject Riverkeeper's evidence of plainly polluted discharges because Riverkeeper did not establish the specific quantities of particular substances. And, even more so, because Defendant admits that Mr. Ray has imported voluminous amounts of well-recognized pollutants for use as "fill material." *See Tungett v. Papierski*, WL 51148, at *2 (E.D. Tenn. Jan. 10, 2006) ("sediment, soil, dirt, trees, and organic debris are…in fact 'pollutants.'").

3

Defendant's only argument against the sufficiency of this evidence is a misinterpretation of this Court's opinion in *Riverkeeper v. Tweden*, No. 3:24-CV-00886, 2025 WL 725741 (M.D. Tenn. Mar. 6, 2021). In *Tweden*, Riverkeeper sought to prove that the defendant was discharging PFAS in violation of the CWA. The Court found proof of discolored water insufficient because there was no "claim that Riverkeeper's scientist is able to perceive, with the naked eye, the ***presence*** of the ***pollutants at issue***…" *Id.* at 9 (emphasis added). Because *Tweden* involved claims premised on a pollutant that is not visible to the naked eye, it has no applicability here where Riverkeeper seeks to hold Defendant liable for discharging landfill material that creates stark discoloration of the water, like sediment, soil, rock, and other "fill material."[2]

The presence of these pollutants is not microscopic or theoretical. It is visually unmistakable. Riverkeeper introduced photos and videos showing muddy, opaque stormwater discharging from a landfill pouring into Sulphur Creek. No reasonable juror requires laboratory testing—or more than the "naked eye" for that matter—to correctly identify that muddy stormwater discharging from a landfill contains at least the solid wastes imported to that landfill.

Defendant's reading of *Tweden* would invent a sweeping, new evidentiary requirement for citizen suits that appears nowhere in the CWA or in case law. Defendant provides no authority to impose such a standard, beyond its misreading of *Tweden*, because none exists.

Lastly, even without Riverkeeper's visual evidence, witness testimony establishing that "muddy water" discharged from the landfill should not require an inference of a "pollutant," as muddy water in this context is *synonymous* with "pollutant." *Cf. Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481 (2d Cir. 2001) ("Turbid water, by definition,

---

[2] This is bolstered by the fact that Tennessee's regulations, incorporated into Mr. Ray's permit, adopts visual standards to prohibit discharges that cause "any objectionable appearance to the water." *See, e.g.*, Tenn. Comp. R. & Regs. 0400-40-03-.03(4)(d).

is water carrying high levels of solids in suspension."). Riverkeeper has thus established that Mr. Ray has "discharged a pollutant," and Mr. Ray should therefore be held liable under the CWA.

### III.     The Applicability of Tennessee's Exemption is a Legal Question.

Defendant concedes the Court described this as "the most heavily disputed legal issue in the case." (*See* ECF 94, at 6) Statutory and regulatory interpretation is a legal question for the Court, not the jury. The jury's factual role ended with finding that Mr. Ray operated a landfill. Once that factual determination was made, the Court alone was responsible for deciding whether Tennessee's regulatory exemption applied and, critically, whether it could override federal RCRA requirements or was preempted. Submitting this to the jury was legal error.

### IV.     Riverkeeper Has Not Abandoned its RCRA "Open Dump" Theory.

Defendant mischaracterizes Riverkeeper's claims. The jury expressly found that Mr. Ray operated a landfill. Under RCRA, operating a landfill without meeting federal sanitary criteria is per se "open dumping." 42 U.S.C. §§ 6944(a), 6945(a). Riverkeeper's motion does not raise a new or abandoned theory. It seeks correction of the legal consequence of the jury's factual finding. Rule 59(e) exists precisely to correct such errors of law and prevent manifest injustice.

### V.     Defendant's "Request for Relief" Is Procedurally Improper.

Defendant's "Request for Relief" under "28 U.S.C.S. §1927 [sic]", is procedurally improper. Fed. R. Civ. Pro. 7(b)(1) requires that "[a] request for a court order must be made by motion." Rule 7(b)(2) confirms that motions must comply with the same captioning and formatting requirements as other pleadings.[3] The "Request" is therefore not properly before the Court. It is procedurally defective, legally unsupported, and requires no response from Plaintiff.

---

[3] Moreover, this Court's Local Rules require that counsel certify they have conferred with opposing counsel on any non-dispositive motion and state whether the motion is opposed and mandates that motions raising legal issues "must be accompanied by a memorandum of law." Local Rule 7.01(a)(1), (2). Defendant has complied with none of these requirements.

5

**CONCLUSION**

Riverkeeper's motion seeks exactly what Rule 59(e) exists to provide: correction of clear errors of law and fact that, if left unaddressed, would allow documented CWA and RCRA violations go unremedied. For the foregoing reasons, the Court should alter/amend its order granting judgment as a matter of law on behalf of Defendant and enter judgment as a matter of law on behalf of Plaintiff. Alternatively, the Court should order a new trial.

Respectfully submitted,

/s/ Mark E. Martin
Mark E. Martin
P.O. Box 1486
Oneonta, Alabama 35121
(205) 516-9350
mmartin@markemartin.com

/s/ Andrew Holt
Andrew Holt (No. 042543)
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 1000
Nashville, Tennessee 37203
Telephone: 615-244-1713
dholt@nealharwell.com

6

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing, and all exhibits thereto, if any, has been served on the below-listed person(s), via the Court's CM/ECF electronic filing system, on the 18th day of July, 2025.

Mark E. Martin
P.O. Box 1486
Oneonta, AL 35121
Telephone: (205) 516-9350
mmartin@markemartin.com

Andrea Taylor McKellar (BPR #19618)
McKellar Law Group, PLLC
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9828
Facsimile: 615.866.1278
andie@.mckellarlawgroup.com

Andrew Holt (No. 042543)
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 100
Nashville, Tennessee 37203
Telephone: 615-244-1713
dholt@nealharwell.com

Gregory L. Cashion
William L. Fitts
Smith Cashion & Orr, PLC
3100 West End Avenue
One American Center, Suite 800
Nashville, Tennessee 37203
(615) 742-8553
(615) 742-8556 Facsimile
gcashion@smithcashion.com

*/s/ Mark E. Martin*

7