UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **TENNESSEE RIVERKEEPER, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 3:23-cv-00878 |
| | ) |
| **RICKY RAY,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Before the Court is Tennessee Riverkeeper, Inc.'s ("Riverkeeper") Motion to Alter or Amend Judgment or, in the Alternative, for New Trial (Doc. No. 126), which has been fully briefed and is ripe for decision (see Doc. Nos. 126-1; 127; 129). For the following reasons, Riverkeeper's Motion will be denied.

### I. BACKGROUND

Riverkeeper[1] brought this environmental citizen suit against Ricky Ray[2] for allegedly operating RR Farms Mass Grading ("Site") in ways that violate the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k. Riverkeeper described its three claims in the Pretrial Order as follows:

---

[1] Riverkeeper is a non-profit corporation with approximately 3,000 members that actively seeks to enforce environmental laws on behalf of and for the benefit of its members. (See Doc. No. 48 at 21–23).

[2] The Pretrial Order refers to "the Rays" collectively, but the Court dismissed Crystal Ray as a defendant by agreement before trial. (Doc. No. 94 at 1–2, 7).

> Count One alleges [Ray] violated the CWA by operating the Site in a manner that discharges pollutants to the waters of the United States and waters of the state in violation of the Permit.[3]
>
> Count Two alleges [Ray] violated the RCRA by operating a Construction and Demolition Landfill without first obtaining a solid waste disposal permit.
>
> Count Three alleges [Ray] violated the RCRA by operating an open dump.

(Doc. No. 92 at 1). Riverkeeper agreed that its "pleadings are amended to conform to the Pretrial Order and the Pretrial Order supplants the pleadings." (Id.). Riverkeeper later voluntarily dismissed Count Three during the Pretrial Conference, and the case proceeded to a jury trial on the theories presented in the Pretrial Order for Counts One and Two. (Doc. Nos. 96 at 3; 128 at 23–24).

For context, Count One alleged a violation of the Clean Water Act, which is intended to "restore and maintain the . . . integrity of the Nation's waters." Cnty. of Maui, Hawaii Wildlife Fund, 140 S. Ct. 1462, 1468 (2020) (quoting 33 U.S.C. § 1251). To effectuate this goal, the Act prohibits "the discharge of any pollutant by any person" into the waters of the United States unless a statutory exception applies. 33 U.S.C. § 1311(a). One exception is that the Environmental Protection Agency ("EPA") (or authorized states, like Tennessee) may issue National Pollutant Discharge Elimination System ("NPDES") permit, which allow the limited "discharge of pollutants, and establish related monitoring reporting requirements, in order to improve the cleanliness and safety of the Nation's waters." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 174 (2000) (citing 33 U.S. § 1342; see also Natural Resources Defense Council, Inc. v. EPA, 822 F.2d 104, 108 (D.C. Cir. 1987) (noting that the NPDES permit program is "the cornerstone of Clean Water Act's pollution control scheme"). With some exceptions not

---

[3] The "Permit" refers to National Pollutant Discharge Elimination System Permit Number TNR 100000. (See Doc. No. 58-9; see also Doc. No. 48 ¶ 63).

relevant here, a citizen, like Riverkeeper, may bring "a suit to enforce any limitation in an NPDES permit[.]" Laidlaw, 528 U.S. at 174.

Riverkeeper's case-in-chief on Count One consisted of five fact witnesses, photos, and videos of what purported to be muddy water flowing away from the Site before August 2023. (See Doc. No. 125 at 2). Riverkeeper's witnesses described the flowing water as "muddy," but no witness testified about what specific pollutant, if any, made the water "muddy." (Id.). Although Riverkeeper's putative expert witness, Barry Sulkin, testified as a fact witness at trial, the Court did not permit him to testify as an expert under Federal Rule of Evidence 702 because his report "offer[ed] little to no analysis" and merely consisted of legal conclusions that Ray violated the Clean Water Act. (Doc. Nos. 58; 96 at 3; 128 at 27–34). Riverkeeper's counsel later acknowledged the deficiencies in Sulkin's report, stating "we understand Mr. Sulkin's original opinion was full of legal opinions. That was our error." (Doc. No. 133 at 7).

When Riverkeeper rested its case-in-chief, Ray orally moved under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on Count One because Riverkeeper failed to present any evidence that he discharged a pollutant into the waters of the United States or Tennessee. (Doc. No. 132 at 134–141). Riverkeeper responded by filing a motion to reopen the case and to reconsider the exclusion of Sulkin as an expert based on his *revised* expert report (Doc. No. 118), which the Court denied because it was too late and too prejudicial for Riverkeeper to present new trial theories after resting its case. (Doc. No. 133 at 10–14). After considering the parties' mid-trial briefs on Ray's Rule 50(a) motion, (see Doc. Nos. 116; 117; 132 at 148–49), the Court granted Ray "judgment as a matter of law on Count One because Tennessee Riverkeeper failed to offer *any* evidence proving a discharge of *pollutants* within the scope of the Clean Water Act." (Doc. Nos. 125 at 6; 132 at 14–15).

Unlike Count One, Count Two survived Ray's Rule 50(a) motion and went to the jury for deliberation. The Court instructed the jury that the RCRA is a federal statute that governs the generation, transportation, storage, treatment, and disposal of hazardous and solid waste. (Doc. No. 133 at 119); see also Meghrig v. KFC Western, Inc., 516 U.S. 479, 483 (1996). The RCRA requires states to create solid waste management plans that ensure waste will be disposed of in an environmentally sound manner. (Doc. No. 133 at 119–20). The EPA approved Tennessee's solid waste management program under the RCRA. (Id.). Tennessee's program generally requires anyone who operates a disposal facility, including a "Class IV Disposal Facility,"[4] to obtain a landfill permit, subject to certain exceptions. (Id. at 120). One exception is that "facilities or practices are not subject to the requirement to have a permit" if they involve "[t]he use of solely natural rock, dirt, stumps, pavement, concrete, and rebar, and/or brick rubble as fill material." Tenn. Comp. R. & Regs. 0400-11-01-.02(1)(b)(3)(xiii); see also (Doc. No. 133 at 121).

These standards presented two factual issues for the jury to decide, and one legal issue for the Court to decide on Count Two. The jury first answered "Yes" to the factual question of whether Riverkeeper proved that the Site is a Class IV Construction and Demolition Landfill. (Doc. No. 123 at 1 (Verdict Form)). The jury also answered "Yes" to the factual question of whether Ray proved the Site "engages in the use of solely natural rock, dirt, stumps, pavement, concrete, and rebar, and/or brick rubble as fill material." (Id.; Doc. No. 133 at 121). Based on the jury's verdict, the Court determined as a matter of law that the permitting exemption in Tenn. Comp. R. & Regs. 0400-11-01-.02(1)(b)(3)(xiii) applied, and therefore Ray could not be liable on Count Two for

---

[4] Tennessee law defines a "Class IV Disposal Facility" as a landfill that is used or to be used for the disposal of demolition/construction wastes, shredded automotive tires, and certain wastes having similar characteristics[.]" Tenn. R. & Regs. § 0400-11-01-.01(3)(d). The Court and the parties referred to this type of facility as a "Class IV Construction and Demolition Landfill."

failing to obtain a landfill permit. (Doc. No. 133 at 121). As a result, Judgment entered in Ray's favor on Count Two. (Doc. No. 124).

Riverkeeper has now filed a timely Motion to Alter or Amend Judgment or, in the Alternative, for New Trial. (Doc. No. 126). For Count One, Riverkeeper argues that "the Court erred in holding that the Clean Water Act requires proof of pollutant discharge." (Doc. No. 126 at 1). Riverkeeper further contends that even if the Act required such proof, a "reasonable jury" considering the evidence presented at trial "could find the discharge of a pollutant." (Id.). For Count Two, Riverkeeper contends that the Court erred in holding that Tennessee regulations exempted Ray from the RCRA's landfill permit requirement. (Id. at 2). Riverkeeper further argues that the Court erred in allowing the jury to determine the legal issue of whether the Tennessee exemption applied. (Doc. No. 126-1 at 18–19). Ray opposes Riverkeeper's Motion on the merits, and because it "makes no attempt to meet the standards of Rule 59(e)."[5] (Doc. No. 127 at 11).

Given that Riverkeeper's Motion presents two requests involving different legal standards, the Court will analyze the motion to alter or amend judgment under Rule 59(e) before moving to the motion for a new trial under Rule 59(a).

## II. MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE 59(e)

Rule 59(e) provides that a party may move "to alter or amend a judgment [within] 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). "Relief under Rule 59(e) is an extraordinary remedy reserved for exceptional cases" and is "seldom granted." Abbas v. Truist Bank, 2025 WL 1287906, at *2 (M.D. Tenn. May 2, 2025) (citations omitted). A district court may grant a Rule 59(e) "motion to alter or amend judgment only if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest

---

[5] Ray ended his opposition with a section titled, "Request for Relief" under 28 U.S.C. § 927. (Doc. No. 127 at 10–12). This request is not a proper motion and therefore does not require a ruling.

injustice." ACLU of Ky. v. McCreary Cnty., Ky., 607 F.3d 439, 450 (6th Cir. 2010) (internal quotation marks omitted).

The Court has "considerable discretion" over whether to grant or deny a Rule 59(e) motion. Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv., 616 F.3d 612, 615 (6th Cir. 2010). In exercising this discretion, the Court must keep in mind that "Rule 59(e) motions are aimed at reconsideration, not initial consideration." Jones v. Select Portfolio Servicing, Inc., 672 F. App'x 526, 530 (6th Cir. 2016) (citation omitted). "A motion under Rule 59(e) is not an opportunity to re-argue a case." Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998). Nor is it an opportunity "to raise arguments or present evidence that should have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2810.1, pp. 127–28 (2nd ed. 1995)); see also United States v. Tenn. Walking Horse Breeders' and Exhibitors' Assoc., 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017).

Riverkeeper does not argue that the Court should grant its Rule 59(e) motion because of newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. Instead, it argues that the Court committed three clear errors of law: (1) the Court erred in holding that Ray was not liable under the Clean Water Act unless Riverkeeper presented proof of pollutant discharge; (2) the Court erred in finding that Riverkeeper presented no evidence of pollutant discharge; and (3) the Court erred in finding that Tennessee's regulatory permitting exemption applied to a construction and demolition landfill that otherwise violates the RCRA for open dumping. (Doc. No. 126-1 at 4–18).

"Although the Sixth Circuit has not precisely defined 'clear error' in the context of the Rule 59(e) analysis," district courts in this circuit agree "that a high standard applies." Lonardo v.

6

Travelers Indem. Co., 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010) (citation omitted). Thus, a party moving to alter or amend a judgment based on a clear error of law must show that the Court wholesale disregarded, misapplied, or failed to recognize controlling precedent. Id. (citing Oto v. Metro Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000)). Other courts have described this standard as requiring the movant to "not only establish that errors were made, but that these errors were so egregious that an appellate court could not affirm the judgment." Dorger v. Allstate Ins. Co., 2009 WL 2136268, at *1 (E.D. Ky. July 16, 2009). An example of such "clear error" could include a district court violating "the express terms of Rule 41(b) by dismissing a case *with* prejudice for lack of personal jurisdiction." Lonardo, 706 F. Supp. 2d at 809 (citing Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005)).

Applying these standards, the Court will address Riverkeeper's three alleged "clear errors of law" in turn.

        1.        The Court Did Not Err in Requiring Riverkeeper to Prove a Pollutant Discharge to Succeed on its Clean Water Act Claim.

In the Pretrial Order (which supplanted the pleadings), Riverkeeper stated that its trial theory for Count One was that Ray "violated the CWA by operating the Site in a manner that ***discharges pollutants to the waters of the United States and waters of the state*** in violation of [his NPDES] Permit." (Doc. No. 92 at 2) (emphases added). Riverkeeper repeated this legal theory in various pretrial filings, including in its proposed jury instructions. (Doc. No. 86 at 5–7 ("Plaintiffs contend that the defendants violated this permit by discharging pollutants into tributaries of Sulphur Creek[.]")); id. at 6 ("To establish a CWA violation, the plaintiffs must prove . . . a discharge . . . of a pollutant[.]"); see also Doc. No. 108 at 2 ("Each day that the site has discharged water while failing to comply with a provision of its permit is a separate violation of the Clean Water Act."); 100 at 1 ("Riverkeeper also contends Mr. Ray is violating the Clean Water

Act by discharging contaminated stormwater in violation of his General Construction Stormwater Permit"). Despite this clear and unmistakable description of its own claim, Riverkeeper now argues that the Court clearly erred by requiring Riverkeeper to prove that Ray "discharges pollutants" from the Site. (Doc. No. 126-1 at 4).

Federal Rule of Civil Procedure 16(d) provides that the final pretrial "order controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Courts in the Sixth Circuit "hold that parties generally forfeit claims or defenses not raised in the final pretrial order." Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC, 695 F. App'x 864, 875 (6th Cir. 2017); see also Gregory v. Shelby Cnty., Tenn., 220 F.3d 433, 442–43 (6th Cir. 2000) ("This Circuit has held that a party's failure to advance a theory of recovery in a pretrial statement constitutes waiver of that theory."); Epazz, Inc. v. Nat'l Quality Assurance USA, Inc., 2021 WL 3808946 at *8 (6th Cir. Aug. 26, 2021); Slinger v. Pendaform Co., 2022 WL 2133745, at *3 (6th Cir. June 14, 2022). There are good reasons for this rule:

> [T]he pretrial conference and order are a vital part of the procedural scheme created by the Federal Rules of Civil Procedure. Because the parties rely on the pretrial conference to inform them precisely what is in controversy, the pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial. For this reason, attorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be. Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue, a claim or theory not raised in the pretrial order should not be considered by the fact-finder.

Gorlikowski v. Tolbert, 52 F.3d 1439, 1443–44 (7th Cir. 1995) (citations, internal quotation marks, and alterations omitted); City of Memphis v. Horn Lake Creek Basin Interceptor Sewer Dist., 693 F. Supp. 3d 839, 867 (W.D. Tenn. 2023) (holding that "the Seventh Circuit's reasoning in Gorlikowski is consistent with Sixth Circuit caselaw").

The "Court and parties expended resources preparing for trial based on the theories presented in the Pretrial Order." (Doc. No. 125 at 7). Indeed, Ray based his trial defense on

Riverkeeper's theory that he violated the Clean Water Act by discharging pollutants in a way that violated his NPDES permit. By asserting this theory in the Pretrial Order as the sole basis for its Clean Water Act claim, Riverkeeper forfeited its new legal argument that Ray is liable on Count One even without proof that he discharged a pollutant. (See Doc. No. 126-2 at 4).

Alternatively, even if Riverkeeper did not forfeit this argument, it is without merit. Courts have recognized at least two general categories of claims under the Clean Water Act. First, there are claims for "discharge violations," which could include, for example, someone actively discharging pollutants into a river at levels that exceed their NPDES permit. See, e.g., Laidlaw, 528 U.S. at 175–78; Inland Empire Waterkeeper v. Corona Clay Co., 17 F.4th 825, 836 (9th Cir. 2021). Second, there are claims for "procedural" or non-discharge violations, which could include a failure to adhere to monitoring or site assessment requirements in an NPDES permit. Corona Clay, 17 F.4th at 831; Laidlaw, 528 U.S. at 174. Riverkeeper apparently takes the position that because it asserted a non-discharge violation, it does not need to prove that Ray ever discharged pollutants into waters of the United States.

There are not many cases, like this one, where a plaintiff tries to bring a Clean Water Act claim without proving *any* pollutant discharge. One reason why such a case may be so rare is that, "in the absence of an actual addition of any pollutant to navigable waters from any point, there is no point source discharge, no statutory violation, no statutory obligation of point sources to comply with EPA regulations for point source discharges, and no statutory obligation of point sources to seek or obtain an NPDES permit in the first instance." See Waterkeeper Alliance, Inc. v. U.S. E.P.A., 399 F.3d 486, 505–06 (2d Cir. 2005). Another reason is that the Clean Water Act "vests district courts with jurisdiction over a citizen suit *only upon* proof of discharge into the navigable waters of the United States." Inland Empire Waterkeeper v. Corona Clay Co., 17 F.4th 825, 836

9

(9th Cir. 2021) (citing 33 U.S.C. §§ 1365(a)(1), 1342(a)) (emphases added). In other words, a plaintiff may proceed with a citizen suit alleging procedural violations of an NPDES permit if, and only if, "the required jurisdictional discharge into United States waters has occurred."[6] Id. This threshold jurisdictional requirement makes logical sense because the whole purpose of the Clean Water Act is to regulate the discharge of pollutants. See 33 U.S.C. § 1311(a); see also City of Highland Park, Mich. v. Envt'l Protection Agency, 817 F. App'x 42, 47 (6th Cir. 2020) (holding that the purpose of a citizen suit under the Clean Water Act is "to *abate pollution* when the government cannot or will not command compliance"). Accordingly, the Court will not amend its Judgment dismissing Count One based on Riverkeeper's erroneous argument that it can proceed with a Clean Water Act claim without *any* threshold proof of pollutant discharge.

2. The Court Did Not Err in Concluding that Riverkeeper Failed to Prove a Pollutant Discharge to Support its Clean Water Act Claim.

Riverkeeper next argues that the Court clearly erred in dismissing Count One for lack of evidence. Specifically, Riverkeeper contends that the videos and photographs it presented at trial depicted "sediment-laden stormwater," which was enough for the jury to conclude that the voluminous amounts of muddy water discharged from Ray's landfill contained at least sediment and solid waste. (Doc. No. 126-1 at 1).

---

[6] The Court recognizes that the Eastern District of Washington reached a different conclusion in Okanogan Highlands Alliance v. Crown Resources Corp., holding that "Plaintiffs do not need to demonstrate that there has been a discharge or addition of pollutants from a point source to navigable waters to establish this Court's jurisdiction or to establish Defendants' potential liability for a Clean Water Act suit." 544 F. Supp. 3d 1092, 1097 (E.D. Wash. 2021). However, Okanogan predates the Ninth Circuit's published decision in Corona Clay, and therefore courts should not apply Okanogan in a way that conflicts with Corona Clay. Moreover, the Okanagan court acknowledged that it found "no support for Defendant's assertion that jurisdiction under the Clean Water Act is dependent upon a showing of a discharge of a pollutant from a point source to navigable waters or addition of a pollutant." 544 F. Supp. at 1096 (citation omitted). Corona Clay now provides that support.

The Court finds that this sufficiency-of-the-evidence argument is improper under Rule 59(e) because it simply rehashes Riverkeeper's argument in response to Ray's Rule 50(a) motion, namely that "the members of the jury are able to perceive sediment laden water with the naked eye and draw the conclusion that pollutants" in the muddy water must be "rock, sand, dirt, construction waste, and other materials that constitute 'fill material.'" (Doc. No. 117 at 4). The Court already considered and rejected this argument because no witness testified at trial that he saw any "sediment" in the muddy water, "nor did any witness testify that sediment in the muddy water is apparent just from looking at the pictures and videos offered into evidence." (Doc. No. 125 at 4–5). Riverkeeper's Rule 59(e) motion does not change the Court's analysis on this issue.

To be clear, the Court agrees with Riverkeeper that "[m]uddy water must be muddy with *something*." (Doc. No. 126-1 at 13 (emphasis added)). But the Court is not aware of any authority (and Riverkeeper does not cite any) holding that all muddy water necessarily must contain a pollutant under the Clean Water Act. (See Doc. No. 133 at 15). Nor would that position make sense. (Id.). Riverkeeper had the burden to show that a pollutant, rather than some other material, was the "*something*" that made the water muddy. See United States v. Cundiff, 555 F.3d 200, 213 (6th Cir. 2009) (noting that the Clean Water Act "is not concerned with mere 'material' but instead with the addition of 'pollutants'"). Instead of presenting evidence of that "something," Riverkeeper tried to fill in the gaps by "invit[ing] the jury to engage in rank speculation about *why* the 'muddy' water is muddy, and then hold Ray liable for discharging unknown pollutants into navigable waters of the United States." (Doc. No. 125 at 4). This lack of evidence supported granting Ray's Rule 50(a) motion during trial, and it likewise supports denying Riverkeeper's Rule 59(e) motion here.

### 3. The Court Did Not Err by Finding Ray Not Liable on Count Two.

Riverkeeper raises several alleged errors regarding Count Two, none of which are convincing. Its primary argument is that Ray's Class IV Construction and Demolition landfill engaged in "open dumping" of solid waste, and therefore he is liable under the RCRA notwithstanding the Tennessee permitting exemption in Tenn. Comp. R. & Regs. 0400-11-01-.02(1)(b)(3)(xiii). See 42 U.S.C. § 6945(a) (prohibiting "open dumping"). This argument is again improper under Rule 59(e).

Riverkeeper alleged in Count Two that Ray violated the RCRA by operating a Construction and Demolition Landfill without first obtaining a solid waste disposal permit." (Doc. No. 92 at 1). Riverkeeper separately alleged in Count Three that Ray violated the RCRA by operating an "open dump," which the Act prohibits under all circumstances. Id. As the Court flagged in its summary judgment Order, however, these two counts asserted "potentially inconsistent theories" because an "open dump" cannot be a "sanitary landfill" under the RCRA. (Doc. No. 94 at 6 & n.2 (citing 42 U.S.C. § 6903(14)). The Court's language prompted Riverkeeper's counsel to "just dismiss" Count Three and expressly abandon its claim that the Site was an open dump. Even if Riverkeeper regrets that choice now, "a Rule 59(e) motion is not the vehicle for [a plaintiff] to resurrect abandoned legal theories after final judgment."[7] Mohammadi v. Islamic Rep. of Iran, 947 F. Supp. 2d 48, 81 (D.D.C. 2013). Having found that Riverkeeper forfeited its "open dump" theory of liability, the Court need not decide whether the RCRA's "open dumping" prohibition preempts

---

[7] To the extent Riverkeeper implies that it forfeited its "open dump" theory but not its "open dumping" theory, the Court reiterates the common understanding that there is "not a functional difference between" these terms under the RCRA. S. Rd. Assocs. v. Int'l Business Machines Corp., 216 F.3d 251, 255 n.3 (2d Cir. 2000). The "statutory and regulatory schemes do not appear to differentiate between" open dump and open dumping "in any meaningful way," and courts "treat the two as the same." Id.

Tenn. Comp. R. & Regs. 0400-11-01-.02(1)(b)(3)(xiii) "as applied here."  (See Doc. No. 126-1 at 17).

### III.     MOTION FOR A NEW TRIAL UNDER RULE 59(a)(1)(A)

Riverkeeper alternatively moves under Rule 59(a) for a new trial because: (1) the Court should have given the jury an opportunity to determine whether the "unrefuted" evidence of pollutant discharge supports liability under Count One; and (2) the jury inappropriately decided the legal question of whether Tenn. Comp. R. & Regs. 0400-11-01-.02(1)(b)(3)(xiii) applies to Ray's landfill.  (See Doc. No. 126-1 at 14, 18–19).

Rule 59(a)(1)(A) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The Sixth Circuit has interpreted this language "to mean that a new trial is warranted when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias."  EEOC v. New Breed Logistics, 783 F.3d 1057, 1066 (6th Cir. 2015) (citation and internal quotation marks omitted).  The moving party bears the burden of demonstrating the necessity of a new trial, but the ultimate decision of whether to grant such relief is a matter vested within the sound discretion of the district court.  Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc., 295 F. Supp. 3d 843, 867 (M.D. Tenn. 2018) (citing Montgomery Cty. Sch. Sys. v. U.S. Gypsum Co., 925 F.2d 993, 1002 (6th Cir. 1991)); Bell v. Johnson, 404 F.3d 997, 1002 (6th Cir. 2005) (holding that the "authority of trial judges to grant new trials pursuant to Rule 59(a) is large").  The Sixth Circuit recognizes that it is rare for a Court to grant a motion for a new trial under Rule 59(a).  Armisted v. State Farm Mut. Auto. Ins. Co., 675 F.3d 989, 995 (6th Cir. 2012).

The Court does not find any valid reason to grant Riverkeeper's Rule 59(a) motion. First, Riverkeeper did not present any evidence of pollutant discharge, and there was nothing legally "unfair" about the Court preventing Count One to go to the jury for insufficient evidence. Second, the Court (not the jury) decided the legal question of whether Tenn. Comp. R. & Regs. 0400-11-01-.02(1)(b)(3)(xiii) exempted Ray from obtaining a landfill permit. The jury instead decided the factual questions of whether the Site was a Class IV Construction and Demolition landfill, and whether the landfill was used solely for fill material. It is therefore a red herring for Riverkeeper to argue that "the applicability of the Tennessee exemption is a question of law that the jury cannot decide." (Doc. No. 126-1 at 18).

## IV. CONCLUSION

For the foregoing reasons, Riverkeeper's Motion to Alter or Amend Judgment or, in the Alternative, for New Trial (Doc. No. 126) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE